No. 3--05--0886
(Consolidated with No. 3--06--0287)

Filed April 8, 2008
IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2008

| THE PEOPLE OF THE STATE | ) | Appeal from the Circuit Court |
|---|---|---|
| OF ILLINOIS, | ) | of the 10th Judicial Circuit, |
| | ) | Peoria County, Illinois, |
|     Plaintiff-Appellee, | ) | |
| | ) | |
|     v. | ) | No. 01--CF--125 |
| | ) | |
| WILLIE LEE COLEMAN, | ) | Honorable |
| | ) | James E. Shadid, |
|     Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HOLDRIDGE delivered the Opinion of the court:

In 2001, the defendant, Willie Lee Coleman, was convicted of two counts of possession with the intent to deliver a controlled substance (720 ILCS 570/401(a)(1)(A), (d) (West 2000)). He was sentenced to concurrent terms of 36 and 7 years' imprisonment, court costs, and a drug assessment of $3,500. On direct appeal, this court affirmed the defendant's conviction and sentence. People v. Coleman, No. 3--01--0539 (2003) (unpublished order under Supreme Court Rule 23). In 2002, the defendant filed a petition for postjudgment relief (postjudgment petition) (735 ILCS 5/2--1401 (West 2002)), and in 2003 the defendant filed a first petition for postconviction relief (first postconviction

petition) pursuant to the Illinois Post-Conviction Hearing Act (Act) (725 ILCS 5/122--1 et seq. (West 2002)). Both petitions were dismissed by the circuit court, and the defendant appealed. This court affirmed the dismissal of the postconviction petition but reversed the dismissal of the postjudgment petition and remanded the latter for further proceedings. People v. Coleman, 358 Ill. App. 3d 1063, 835 N.E.2d 387 (2005). On remand, the circuit court dismissed the defendant's postjudgment petition. The defendant appealed that dismissal to this court, and that appeal was docketed as case No. 3--06--0287. In the meantime, the defendant had sought leave to file a successive petition for postconviction relief (successive postconviction petition). The circuit court denied leave to do so. The defendant appealed that ruling, and this court docketed that appeal as case No. 3--05--0886. For purposes of the instant appeal, case Nos. 3--05--0886 and 3--06--0287 have been consolidated. We affirm.

FACTS

I. Trial

On February 1, 2001, the Peoria police executed a search warrant at 1507 W. Butler, which was a known drug house. In addition to the search warrant, the police had an arrest warrant for Otis Ross, whom the police believed to be residing at 1507 W. Butler.

2

To execute the search warrant, an undercover officer went to the back door of the home and posed as a drug buyer. The officer testified that he knocked on the back door, and the defendant answered it. The officer said that he wanted to purchase "two bags." The defendant went back into the house and then returned to the back door and opened it. At that point, two police officers rushed the defendant and knocked him to the ground. Meanwhile, several other police officers attempted to enter through the front door. They were unsuccessful and ultimately entered through the back door.

In the living and dining area of the house, the police found 111 small packages of heroin. They also found a 38-gram rock of cocaine as well as several individual baggies of cocaine. It appeared that someone had been breaking the rock into smaller individual portions of cocaine. The police also discovered that the front door had been wedged shut with a shovel.

The defendant testified that his cousin lived in the house. He told the police that he did not live in the house and he was only visiting. However, one of the officers testified that the defendant told him he had been staying in the house since Thanksgiving.

The police searched the unattached garage and found a car. In the glove compartment, they found an application for natural gas service addressed to William L. Coleman at 1507 W. Butler.

The defendant testified that the application belonged to his cousin, William Lawrence Coleman, who was known as "Larry." He asserted that his cousin had left the application in the glove compartment a few days earlier when the defendant had assisted his cousin in moving into the house on Butler.

The police also found a key to the back door and a key to a padlock on an upstairs room door on the defendant's key ring.

The defendant testified that he came to Peoria with a friend, Vratraun Robinson, and intended to visit his girlfriend. They stopped in Dwight and purchased milk and donuts. As they neared Peoria, the defendant began to have stomach problems and needed to stop. He decided to stop at his cousin's house because it was closer than his girlfriend's. He called his cousin from a cellular phone to see if he was home. His cousin told him to stop by and requested that he park in the garage.

The defendant and Robinson arrived around 9 p.m. They entered his cousin's home through the front door. The defendant went upstairs immediately to use the washroom. He heard voices and thought that there were people besides his cousin and his friend in the house. His friend used the cellular phone, which his cousin then brought upstairs to the defendant. The defendant called his girlfriend. While he was on the phone with her, he heard knocking at the door. He went downstairs and realized he was the only person in the house. When he answered the back

4

door, the police ran in and threw him to the ground.  He said he did not know there were drugs in the house until the police took him into the living room in handcuffs.

Robinson testified on the defendant's behalf.  He and the defendant were en route to Peoria from Chicago when they stopped to eat.  As they neared Peoria, the defendant had to use the bathroom.  They decided to stop at 1507 W. Butler, the home of the defendant's cousin Larry, and arrived around 9 p.m.  The defendant parked his car in the garage, and then Robinson, the defendant, and the defendant's cousin entered the residence through the front door.  Although the defendant had made an emergency stop to use the bathroom, the defendant first spoke with his cousin for about five minutes.  Robinson only saw the defendant's cousin, but he heard others speaking in the home.

Robinson then used the defendant's phone to make a call.  Robinson called a girl he knew and requested that she pick him up, and then the defendant went upstairs while using the phone.  Robinson waited outside for 10 minutes for his ride to arrive and did not see anyone leave or enter the residence during this time.  Robinson left and returned to 1507 W. Butler 20 to 30 minutes later.  By this time, the police were at the premises and had executed the search warrant.  Robinson knocked on the front door and was told to go to the back.  He did and was immediately cuffed.  At this time, it was 9:22 p.m.  Robinson was taken to

5

jail on an outstanding traffic warrant and released later that night.

The jury convicted the defendant of two counts of possession with the intent to distribute a controlled substance. The judge sentenced the defendant as described above. The defendant appealed.

## II. Direct Appeal

On appeal, the defendant argued that (1) he was improperly indicted without a preliminary hearing, (2) his counsel was ineffective, (3) the trial judge should have recused himself because he had previously represented the defendant, (4) he was not proven guilty beyond a reasonable doubt, (5) his due process rights were denied when his crime was enhanced from a Class 1 to a Class X felony, and (6) he was entitled to a $5 per day credit for time served in pretrial custody. This court granted the credit against the defendant's fine, but otherwise affirmed. People v. Coleman, No. 3--01--0539 (2003) (unpublished order under Supreme Court Rule 23). In response to the defendant's argument that he was not proven guilty beyond a reasonable doubt, we held, "[g]iven the strong evidence of the defendant's guilt and the utter implausibility of the defendant's testimony, we cannot say that the jury's finding was unreasonable."

## III. Other Collateral Filings

The defendant first filed a pro se postjudgment petition in September 2002. 735 ILCS 5/2--1401 (West 2002). In this petition, the defendant challenged his arrest and the search and seizure of evidence from the home on 1507 W. Butler. The defendant also asserted that a Peoria police officer gave false testimony to the grand jury and that the State failed to weigh each package of contraband.

In March 2003, the defendant, pro se, filed a first postconviction petition. 725 ILCS 5/122--1 et seq. (West 2002). This petition asserted that the Peoria police officer who wrote the affidavit in support of the search warrant invented the confidential informant. The defendant also argued that trial counsel was ineffective for failing to challenge the affidavit.

On motion of the State, the trial court dismissed the defendant's postjudgment petition, finding the defendant's claims were res judicata. The circuit court also summarily dismissed the defendant's first postconviction petition as frivolous and patently without merit, on the basis that the defendant waived the issues presented since they were not pursued on direct appeal. The defendant appealed the dismissal of both the petition for relief from judgment and petition for postconviction relief. This court affirmed the dismissal of the defendant's first postconviction petition, but reversed the dismissal of the

7

postjudgment petition and remanded it for further proceedings. Coleman, 358 Ill. App. 3d 1063, 835 N.E.2d 387.

Before the circuit court ruled on the defendant's postjudgment petition, the defendant was allowed to supplement this petition. The defendant filed a petition to amend his previous postjudgment petition. He now asserted that (1) he was a guest in the home at 1507 W. Butler and therefore should never have been charged, (2) Otis Ross had never been in the home at 1507 W. Butler, and (3) the police used the warrant as a pretext for entering the residence. The trial court denied the postjudgment petition on res judicata grounds, concluding that the issues could have been raised on direct appeal. The defendant appealed, and this court docketed the case as No. 3--06--0287.

IV. Successive Post-Conviction Petition

In the meantime, on October 25, 2005, the defendant filed a successive postconviction petition claiming actual innocence based on newly discovered evidence. 725 ILCS 5/122--1 et seq. (West 2004). In this petition, the defendant asserted that (1) the search warrant for 1507 W. Butler was based on false information, (2) the police failed to use proper surveillance before executing the search warrant, thus allowing time for some to escape while leaving an innocent person alone in the home, and (3) the warrant was for the wrong person's home because while

8

"everyone had a[n] idea drugs [were] inside the house, the Peoria Police [were] clueless to who sold drugs from" this location. Attached to the petition were affidavits from Otis Ross, Richard Welch and Keith Mitchell. The defendant asserted that these individuals were not called to testify at trial and supported his claim of actual innocence.

Ross averred that he did not sell drugs from 1507 W. Butler and that he never lived at the residence, nor had he been a "repeated visitor" to this location. However, Ross also stated that he was "no stranger" to 1507 W. Butler because in 2000, he would visit a female friend who lived at the address.

Welch and the defendant met while they were incarcerated in the Peoria County jail and conferred about the defendant's instant arrest when they met again at the Illinois River Correctional Center. Welch averred that he was familiar with the activity that took place at 1507 W. Butler and had never seen Ross at that residence, nor had he seen the defendant at that residence or on that block. Welch also stated that the home was used only to package drugs, not to sell them. Welch then averred that an individual named Jarod Carpenter told him that others were packaging drugs on February 1, 2001, and the defendant had arrived shortly before the Peoria police executed the search warrant. He then stated that Carpenter told him that "[Carpenter] and his friends manage[d] to escape out the back

9

door just in the nick of time right before the police arrived they ran next door and watched [the defendant] get arrested."  He also averred that he had a conversation with a Peoria police officer, who told him that the police knowingly used the name of an old informant on the warrant.

Keith Mitchell stated he is the defendant's cousin.  He averred that he was at the 1507 W. Butler residence on February 1, 2001, with Carpenter and his friends.  Prior to the defendant's arrival, Mitchell heard Carpenter speaking with the defendant via telephone, and Carpenter told the defendant to park his car in back.  Mitchell averred that Carpenter told him that the defendant was on his way to 1507 W. Butler to use the washroom, but then stated that the defendant did not arrive until a few hours later.  After the defendant arrived at the residence with his friend, they entered through the front door.  The defendant spoke to Carpenter and proceeded to the bathroom.  Then, "for some odd reason," Carpenter knew the Peoria police were planning to execute a search warrant in the near future, so Mitchell yelled to the defendant to vacate the residence, but the defendant could not hear this warning.

Mitchell and all of the individuals in the home, with the exception of the defendant, were able to vacate the residence unnoticed and take shelter in a home next door.  The police then arrived, executed the warrant and arrested the defendant and

10

Robinson.  Finally, Mitchell stated that he spoke with the defendant's trial attorney and offered to testify on the defendant's behalf.  The defendant's attorney warned Mitchell that he may be arrested if he appeared and later told Mitchell that he would not be needed to testify.

The circuit court denied the defendant leave to file the successive postconviction petition.  In doing so, the court stated that the defendant alleged "newly discovered evidence but challenges the sufficiency of the search warrant."  The court then stated that a challenge to the search warrant was not brought at trial or on direct appeal and was therefore waived.  The court also cited the order dismissing the defendant's first postconviction petition, which stated that as a casual guest there was a question of whether the defendant had standing to challenge the sufficiency of the warrant.  The court concluded that the issues could have been, and were, raised in the first postconviction petition.  Further, the court held that fundamental fairness did not require the filing of the defendant's instant successive postconviction petition.  The defendant appealed, and this court docketed the case as No. 3--05--0886.  Case Nos. 3--06--0287 and 3--05--0886 were consolidated for purposes of appeal.

ANALYSIS

11

On appeal, the defendant argues that his successive postconviction petition successfully advanced a claim of actual innocence and was supported by affidavits of witnesses who were not available at trial. The defendant asserts that "what was missing from his case was testimony from people who were inside the house when he first got there," and is supplied in his petition and the attached affidavits. We disagree.

Under the Act, any person imprisoned in a penitentiary may file a petition for postconviction relief if the individual asserts there was a substantial denial of his constitutional rights at trial. 725 ILCS 5/122--1(a) (West 2004). In a noncapital case, the Act provides a three-stage process for adjudicating postconviction petitions. At the first stage, a judge may summarily dismiss a petition if it is found frivolous or patently without merit. 725 ILCS 5/122--2.1(a)(2) (West 2004). A petition is considered frivolous or patently without merit if the petitioner's allegations, taken as true, fail to state the gist of a constitutional claim. People v. Collins, 202 Ill. 2d 59, 782 N.E.2d 195 (2002). The petitioner need only present a limited amount of detail to meet this standard. People v. Kellerman, 342 Ill. App. 3d 1019, 804 N.E.2d 1067 (2003). While all well pled allegations are liberally construed and normally taken to be true, they will not be so considered if contradicted by the record. People v. Coleman, 183 Ill. 2d 366,

12

701 N.E.2d 1063 (1998).  We review _de novo_ the first-stage dismissal of a postconviction petition.  _Kellerman_, 342 Ill. App. 3d 1019, 804 N.E.2d 1067.

The Act contemplates the filing of only one postconviction petition.  _People v. Flores_, 153 Ill. 2d 264, 606 N.E.2d 1078 (1992).  Claims raised in an original postconviction petition and decided by the circuit court or on direct review have _res judicata_ effect.  _People v. Thompson_, 331 Ill. App. 3d 948, 773 N.E.2d 15 (2002).  Claims that could have been raised in the earlier petition and on review, but were not, are deemed waived.  _Thompson_, 331 Ill. App. 3d 948, 773 N.E.2d 15.  Regarding a successive postconviction petition, the procedural bar of waiver is not merely a rule of judicial administration.  Rather, it is an express statutory requirement under the Act.  See 725 ILCS 5/122--3 (West 2004); see also _People v. Pitsonbarger_, 205 Ill. 2d 444, 793 N.E.2d 609 (2002).

The procedural bars do not, however, preclude a successive postconviction petition when the defendant establishes that the proceedings on his initial postconviction petition were fundamentally deficient.  _Flores_, 153 Ill. 2d 264, 606 N.E.2d 1078.  To show such a deficiency, the defendant must demonstrate "cause and prejudice."  _Pitsonbarger_, 205 Ill. 2d 444, 793 N.E.2d 609.  In the event a petitioner cannot meet the cause and prejudice test, the failure to bring a claim in a prior

13

postconviction petition will be excused only "if necessary to prevent a fundamental miscarriage of justice." People v. Washington, 348 Ill. App. 3d 231, 237, 809 N.E.2d 239, 243 (2004). In a noncapital case, the petitioner must show actual innocence in order to establish such a miscarriage of justice. Pitsonbarger, 205 Ill. 2d 444, 793 N.E.2d 609.

Here, the defendant alleges actual innocence based on newly discovered evidence. In order to obtain relief under this theory, the "defendant must show that the evidence he is relying on (1) is of such conclusive character that it will probably change the result on retrial; (2) is material to the issue, not merely cumulative; and (3) was discovered since trial and is of such character that the defendant in the exercise of due diligence could not have discovered it earlier." People v. Anderson, 375 Ill. App. 3d 990, 1006, 874 N.E.2d 277, 292 (2007).

Evidence is not newly discovered if "it presents facts already known to the defendant at or prior to trial, though the source of those facts may have been unknown, unavailable, or uncooperative." People v. Barnslater, 373 Ill. App. 3d 512, 523, 869 N.E.2d 293, 303 (2007). Further, an "allegation of newly discovered evidence of innocence is not intended to question the strength of the State's case. An allegation of newly discovered evidence of innocence seeks to establish the defendant's actual innocence of the crimes for which he has been tried and

14

convicted." People v. Washington, 171 Ill. 2d 475, 495, 665 N.E.2d 1330, 1339 (1996) (McMorrow, J., specially concurring); see also People v. Manrique, 351 Ill. App. 3d 277, 280, 813 N.E.2d 1095, 1098 (2004) (this court found a defendant had sufficiently stated the gist of a constitutional claim in a successive postconviction petition because the evidence supporting actual innocence was "potentially exculpatory"); Barnslater, 373 Ill. App. 3d at 520, 869 N.E.2d at 300, (court held "actual innocence" means total vindication or exoneration and does not concern whether a defendant has been proven guilty beyond a reasonable doubt).

In this case, the defendant's successive petition for postconviction relief and the supporting affidavits fail to establish his actual innocence.

First, we agree with the State's contention that the affidavit of Ross, averring that he was neither a resident nor a "repeated visitor" to the home at 1507 W. Butler, challenges only the sufficiency of the search warrant. Therefore, it does not assist in showing the defendant is actually innocent of the crime of which he was convicted. Welch's affidavit also raises a challenge to the sufficiency of the search warrant. Welch averred that he lives on West Butler, he has never heard of Ross, and that an informant could not have purchased drugs at the residence because that residence was only used to store and

15

package drugs.  These assertions do not establish that the defendant is actually innocent of the crimes for which he was convicted, but only challenge the sufficiency of the search warrant and the underlying affidavit.  We agree with the circuit court that this challenge was waived and fundamental fairness does not require the filing of a successive postconviction petition on this claim alone.

Next, the defendant has not established his actual innocence based on newly discovered evidence.  The affidavits of Welch and Mitchell do not offer such conclusive evidence that the result at trial would change.  Additionally, the affidavits of Welch and Mitchell do not present new evidence.  Rather, they present evidence that is cumulative to the defendant and Robertson's testimony at trial.

In relevant part, Welch averred that Carpenter told him that Carpenter and his friends managed to flee the residence immediately before the police arrived, leaving the defendant alone in the residence, and that the defendant had just arrived at the residence.  First, Welch's purported testimony does not add anything exculpatory or different to the facts adduced at trial.  It merely reiterates the testimony that was offered by the defendant and Robinson at trial and rejected by the jury.  Also, Welch's purported testimony does not fill the void the defendant alleged was left at trial, specifically that "what was

16

missing from his case was testimony from people who were inside the house when he first got there," because Welch does not claim to have been at the residence on February 1, 2001. Rather, his knowledge is based on the hearsay statements of Carpenter.

Mitchell's affidavit also offers testimony that was cumulative to the testimony offered by the defendant and Robinson at trial and rejected by the jury. Furthermore, portions of Mitchell's purported testimony conflicts with the evidence adduced at trial. The defendant testified that en route, he phoned and spoke with his cousin, "Willie Lawrence Coleman." The defendant said that he requested to use the washroom, and his cousin agreed and told him to park his car in the garage. However, Mitchell averred that the defendant phoned Carpenter, whom he heard tell the defendant to park his car in the back. In addition, the defendant was found alone in the home by the police, who also had the residence under surveillance that day, while Mitchell averred that there were a number of friends in the home immediately before the police executed the search warrant who managed to escape the home unnoticed prior to the entry by the police.

Finally, it is clear that the evidence offered by Mitchell is not "newly discovered." Mitchell admitted that he offered to testify at the defendant's trial but was told by the defendant's attorney that his testimony would not be needed. Thus, not only

17

was Mitchell not "unknown, unavailable, or uncooperative," (see Barnslater, 373 Ill. App. 3d at 523, 869 N.E.2d at 303) he was known, available, and offered to cooperate. Additionally, the defendant has not established that in the exercise of due diligence, Welch could not have been located earlier. In his affidavit, Welch stated that he and his family lived on West Butler. He also averred that he knew that drug activity occurred at 1507 W. Butler, and also knew who conducted the activity. The defendant was found inside 1507 W. Butler and also stated that his cousin lived there. Therefore, it cannot be said that in the exercise of due diligence, Welch could not have been found by the defendant to offer his testimony on his behalf at trial.

As a result, the defendant has not sufficiently established a claim that he was actually innocent of the crimes for which has was tried and convicted. The circuit court properly denied the defendant leave to file his successive postconviction petition.

CONCLUSION

The judgment of the circuit court of Peoria County is affirmed.

Affirmed

MCDADE, P. J., and SCHMIDT, J., concur.