2021 IL App (1st) 180018-U

No. 1-18-0018

Order filed March 15, 2021

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 09 CR 20466 |
| | ) | |
| KELLY PEARSON, | ) | Honorable |
| | ) | Domenica A. Stephenson, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE WALKER delivered the judgment of the court.
Justices Hyman concurred in the judgment and order. Justice Coghlan dissented.

**ORDER**

¶ 1    *Held*:   The affidavit of a co-defendant stating that the defendant had no way of knowing in advance that the co-defendant would shoot sufficed to state the gist of a claim for newly discovered evidence of actual innocence, where the co-defendant, on the advice of counsel, did not testify at the defendant's trial, and the corroboration of the defendant's otherwise uncorroborated defense sheds new light on the weak evidence against the defendant.

¶ 2    A jury found Kelly Pearson guilty of first-degree murder as an accomplice to his brother,

Keith Pearson.  Kelly filed a postconviction petition claiming that newly discovered evidence

showed actual innocence. He supported the petition with Keith's affidavit, in which Keith admitted that he shot the victim and that Kelly had no way of knowing that Keith would fire the gun. Kelly appeals from the dismissal of his petition at the first stage of postconviction proceedings. We find that the petition states the gist of a claim for relief. We reverse and remand to advance the petition to the second stage of postconviction proceedings.

¶ 3                                    I. BACKGROUND

¶ 4      On October 7, 2009, around 8 p.m., Keith fired several gunshots out of the passenger side of a car driven by Kelly. The shooting resulted from several prior shootings. On July 6, 2009, Kelly drove a car owned by his girlfriend, Veronica Estudillo. Keith and Terrence Binion rode with Kelly. A car pulled up next to Estudillo's car, and a gun from the passing car discharged nine or ten bullets into Estudillo's car, killing Binion and injuring Kelly. Kelly recognized the shooter's car as one that belonged to a member of the New Breed gang. He told police he saw a black man wearing a hoodie shooting, but he did not further describe the shooter.

¶ 5      On September 20, 2009, someone shot at Keith. Keith told police he could not identify the shooter, but he heard on the street that a man called Black, also known as Mitch, a member of the New Breed, was the shooter. On September 30, 2009, someone shot at Kelly while Kelly was driving Estudillo's car. Keith started carrying a gun after September 30, 2009.

¶ 6      On October 7, 2009, Kelly again drove Estudillo's car, with Keith in the passenger seat. Less than half a mile from Keith's home, Kelly turned left from Madison to take Homan north. As Kelly came to a stop in the intersection, Keith fired the gun in the direction of a bus stop at the corner. One of the bullets killed Natasha Howliet as she stood at the bus stop.

¶ 7 Keith called Curtis Pearson, a cousin of Keith and Kelly, from the car shortly after the shooting. Curtis agreed to meet Keith and Kelly at a gas station. The next day, Kelly took Estudillo's car to a parking lot and arranged for a mechanic to pick it up there and take it to the mechanic's home, several miles from Kelly's home. Kelly told Estudillo about the shooting and the location of her car.

¶ 8 Police arrested Keith and Kelly, both members of the Unknown Vice Lords gang, based on statements of witnesses at the bus stop. Prosecutors charged Kelly as an accomplice to murder. At the jury trial, one of the witnesses who spoke to police at the scene, Michael Morris, testified that he did not belong to the New Breed gang, but he sometimes associated with members of the New Breed gang. Morris said that New Breeds had no dispute with Vice Lords. Morris saw Estudillo's car turn slowly, and then he heard gunshots.

¶ 9 Terrance Burdine testified that he also saw Estudillo's car turn slowly before he heard the gunshots. No one asked Burdine whether he belonged to a gang or associated with any members of any gangs. The court permitted a witness to read into the record a statement Burdine signed at the police station, where Burdine said Estudillo's car almost stopped in the intersection before turning north.

¶ 10 Curtis refused to testify at trial. The trial court permitted the State to introduce into evidence Curtis's out of court statements. Curtis told an assistant State's Attorney that when Keith and Kelly came to meet him after the shooting, he told them they needed to get rid of the gun and the car. He helped Keith get rid of the gun. The court also permitted a witness to read to the jury a transcript of Curtis's testimony to the grand jury. Curtis there testified that Keith admitted to shooting towards the bus stop and said, "man, I fucked up."

¶ 11    Estudillo testified that a day or so after October 7, 2009, Kelly told her that Keith had fired shots toward the bus stop at Madison and Homan. Kelly told Estudillo to expect police to question her about her car. Estudillo testified that Kelly told her to lie to police and tell them that the car had been repossessed. Police came to interview Estudillo on October 12, 2009. At first she told them her car had been repossessed, but then, later in the same interview, she disclosed the car's actual location. The grand jury transcript shows that Estudillo testified that Kelly told her that he had not expected Keith to start shooting.

¶ 12    Kelly testified that on July 6, 2009, he told police that members of the New Breed gang participated in killing Binion. He recognized the car as one a member of the New Breed drove. He did not know who shot Binion. Kelly returned to the police station to look at a photo array on September 20, 2009. He identified a photograph as a picture of a person involved in the shooting. The identification did not lead to an arrest.

¶ 13    On September 30, 2009, while he was driving Estudillo's car near the intersection of Grand Avenue and Hamlin Avenue, a car pulled up behind him and someone in the car fired seven or eight shots at Kelly. One bullet hit the car, but none hit Kelly. Between September 30, 2009, and October 7, 2009, when Keith regularly carried a gun, Kelly drove the car with Keith as his passenger several times, and no shootings occurred on those trips.

¶ 14    Kelly testified that on October 7, 2009, around 8 p.m., he was with Keith in Estudillo's car when Estudillo called him and he started to drive to Estudillo's home. He stopped at the light at Madison and Homan. After the light changed and he started his left turn, he heard gunshots, and he saw Keith shooting the gun towards the bus stop. Kelly started cursing at Keith. Kelly said, "Why would you shoot out my girl car? The whole neighborhood know we be in this car." Keith

said, "go, go, go, go," and Kelly, in a panic, drove. He got to the expressway, then he heard Keith calling Curtis. Kelly drove to meet Curtis and drove off with Keith after the meeting. Kelly testified that he told Estudillo he left the car with a mechanic, and he never told her to lie to police. Kelly testified that he did not expect Keith to shoot at anyone, and they had no plan to shoot anyone.

¶ 15 On cross-examination, Kelly testified that Vice Lords have no problems with New Breeds. The prosecutor asked whether Kelly personally had a problem with New Breeds, and Kelly answered:

"Me, per se, I didn't have no problem with anybody. It's just when people can't find other people, they get points off getting that other people. If somebody looking for some of my friends to shoot at and they can't get them, if they see us, they shoot at us, just to send a message.

Me, per se, I never had no beef with nobody."

¶ 16 Kelly also answered questions about his neighborhood in the following testimony:

"Q. Now, the area of Madison and Homan, there are New Breeds in that area, right?

A. On the 3300 block of Madison where the rowhouse is, yeah, they New Breeds.

Q. So you knew when you were driving that direction that you were driving towards the New Breeds, correct?

A. Yes, they on the other side of the street. Yes, on the other side of the boulevard.

\* \* \*

Q. And so when you made that left onto Homan, you knew you were turning into the territory near the New Breeds, right?

A. No, that's not New Breed territory when I make the turn on Homan. They across Homan in the rowhouses. The Martin Luther King Plaza, that's their territory. Not me making a left-hand turn on Homan.

Q. So they're in the area?

A. Yeah. We [Vice Lords] in the area. They in the area."

¶ 17 Kelly admitted he did not kick Keith out of the car after the shooting. Kelly added, "I didn't want to rat my brother out. I didn't tell nobody."

¶ 18 Detective Marco Garcia testified that after July 6, 2009, Garcia tried several times to contact Kelly and Keith to discuss the murder of Binion. Several times Garcia went to their home address on Adams near Homan. Kelly finally came to the police station when police picked him up on September 19, 2009. He repeated his description of the car, and he still said of the shooter only that he was a black male wearing a hoodie. Garcia admitted that on September 20, 2009, Kelly identified a photograph as a picture of a man involved in the murder of Binion.

¶ 19 The jury found Kelly guilty of murder. The trial court denied Kelly's posttrial motion and sentenced him to 30 years in prison. The appellate court affirmed the conviction and sentence on the direct appeal. *People v. Pearson*, 2016 IL App (1st) 132735-U.

¶ 20 Kelly filed a postconviction petition on August 21, 2017. He argued the trial court erred by denying his request for an instruction emphasizing that mere presence at an offense does not make a person accountable for the offense, and he claimed that newly discovered evidence of innocence required a new trial. He attached an affidavit from Keith, who said that Keith's counsel

advised him not to testify at Kelly's trial, and Keith followed that advice. Keith added that he fired the gun when he saw a Black man in a hoody pull out a gun as he walked toward the passenger side of Estudillo's car. Kelly had nothing to do with Keith's decision to fire the gun in self-defense. Keith persuaded Kelly not to tell police about the shooting.

¶ 21 The trial court dismissed the petition as frivolous. The court found no error in its refusal of the non-pattern instruction on accountability, and held Keith's affidavit merely cumulative to Kelly's trial testimony. Kelly now appeals.

¶ 22                                    II. ANALYSIS

¶ 23 Kelly contends the trial court should have advanced his petition to the second stage of postconviction proceedings for consideration of his newly discovered evidence of actual innocence, and because the court erred by denying his request for an instruction emphasizing that mere presence does not support a finding of accountability. At the first stage of postconviction proceedings, the defendant need state only the gist of a claim for relief. *People v. Hodges*, 234 Ill. 2d 1, 11 (2009). The trial court should dismiss the petition at this stage only if "the petition has no arguable basis either in law or in fact." *Hodges*, 234 Ill. 2d at 12. This standard applies to actual innocence claims and claims of trial error in a postconviction petition. *People v. Coleman*, 2013 IL 113307, ¶ 84. We review *de novo* the dismissal of a postconviction petition at the first stage of postconviction proceedings. *People v. Buffer*, 2019 IL 122327, ¶ 12. "To establish a claim of actual innocence, the supporting evidence must be (1) newly discovered, (2) material and not cumulative, and (3) of such conclusive character that it would probably change the result on retrial." *People v. Robinson*, 2020 IL 123849, ¶ 47.

¶ 24    Keith's affidavit constitutes newly discovered evidence because Keith exercised his fifth amendment right not to testify at Kelly's trial. *People v. Molstad*, 101 Ill. 2d 128, 135 (1984). The affidavit corroborates Kelly's otherwise uncorroborated defense, and therefore it is not cumulative. *People v. Willingham*, 2020 IL App (1st) 162250, ¶ 27.

¶ 25    Our supreme court in *Robinson* explained the third requirement for claims of actual innocence:

> "[T]he conclusive character element refers to evidence that, when considered along with the trial evidence, would probably lead to a different result. [Citation.] The conclusive character of the new evidence is the most important element of an actual innocence claim. [Citation.]
>
> Ultimately, the question is whether the evidence supporting the postconviction petition places the trial evidence in a different light and undermines the court's confidence in the judgment of guilt. [Citation.] The new evidence need not be entirely dispositive to be likely to alter the result on retrial. [Citation.] Probability, rather than certainty, is the key in considering whether the fact finder would reach a different result after considering the prior evidence along with the new evidence."
>
> *Robinson*, 2020 IL 123849, ¶¶ 47-48.

¶ 26    At this stage of proceedings, the court must take as true all of Kelly's well-pleaded allegations not proven false by the record. *People v. Coleman*, 183 Ill. 2d 366, 380-81 (1998). The trial court must not consider credibility in deciding whether to advance a postconviction petition to an evidentiary hearing. *People v. Sanders*, 2016 IL 118123, ¶ 42.

¶ 27    The State presented weak but sufficient evidence against Kelly. Kelly admitted he knew Keith carried a gun with him on October 7, 2009. This court permitted the inference that Kelly knew Keith intended to shoot unarmed persons because people who carry guns intend to shoot. Our supreme court has held that people sometimes carry guns outside the home for self-defense. *People v. Aguilar*, 2013 IL 112116, ¶¶ 19-20. Several circumstances support the inference Kelly thought Keith carried the gun solely for self-defense and not for the purpose of shooting at unarmed persons on October 7, 2009. Keith started carrying the gun on September 30, 2009, because people shot at him or Kelly several times after July 6, 2009. Kelly had driven with Keith, armed, as his passenger several times, and Keith had not fired the gun.

¶ 28    The prosecutor characterized the area around Madison and Homan as New Breed territory, although the only evidence on the issue came from Kelly, who said both New Breeds and Vice Lords use that area, and New Breed territory lies nearby. If Kelly drove Keith to or from Keith's home on prior trips, he drove within a half mile of Madison and Homan, which the prosecution counts as New Breed territory. Nothing distinguishes the prior trips from the trip on October 7, 2009. Keith's failure to fire the gun on prior trips significantly weakens the inference that he knew Keith would fire the gun on October 7, 2009.

¶ 29    The State emphasized that Kelly stopped the car in the intersection of Madison and Homan before completing the left turn. But the court can take judicial notice of the fact that cars often stop in intersections in the course of making left-hand turns. See *Gaca v. City of Chicago*, 411 Ill. 146, 151 (1952). The State contends Kelly and Keith could have provided more help to Detective Garcia in his efforts to find Binion's killer, but no evidence suggests Kelly and Keith knew any more than they told Detective Garcia.

¶ 30 This court also permitted the jurors to infer Kelly's prior knowledge of Keith's intent to shoot from Kelly's actions after the shooting. Kelly, with Keith as his passenger, drove to meet Curtis, and they discussed how to conceal evidence. However, in the circumstances of this case, Kelly's failure to report Keith's offense, Kelly's flight with Keith from the scene, and Kelly's continued association with Keith, might show no more than family loyalty, and not a prior criminal plan or knowledge that Keith would commit the offense. See *People v. Dennis*, 181 Ill. 2d 87, 108 (1998); *People v. Lopez*, 72 Ill. App. 3d 713, 717 (1979).6, 151 (1952).

¶ 31 Keith's affidavit, which we must take as true, corroborates Kelly's otherwise uncorroborated defense that, although he knew Keith carried a gun, Kelly expected Keith to use it only in self-defense, and not to shoot at unarmed persons. The corroboration of Kelly's defense puts the weak evidence against Kelly in a different light and undermines confidence in the finding of guilt. We hold that Kelly's postconviction petition states the gist of a claim for actual innocence.

¶ 32                                   III. CONCLUSION

¶ 33 Keith's affidavit corroborates Kelly's otherwise uncorroborated defense, and therefore, if the jury found Keith credible, Keith's testimony would put the weak evidence against Kelly in a significantly different light, in a way that undermines confidence in the guilty verdict. Accordingly, we find that the petition states the gist of a claim that newly discovered evidence of actual innocence requires a retrial. Because we find the allegations of newly discovered evidence sufficient, we need not address the instruction issue. We reverse the dismissal of Kelly's postconviction petition and remand to advance the petition to the second stage of postconviction proceedings.

¶ 34 Reversed and remanded.

¶ 35     JUSTICE COGHLAN, dissenting:

¶ 36     I respectfully dissent from the majority's holding that defendant's postconviction petition states the gist of a claim of actual innocence.

¶ 37     "To establish a claim of actual innocence, the supporting evidence must be (1) newly discovered, (2) material and not cumulative, and (3) of such conclusive character that it would probably change the result on retrial." *People v. Robinson*, 2020 IL 123849, ¶ 47. Supporting evidence is cumulative if it "adds nothing to what already was before the jury." *People v. Ortiz*, 235 Ill. 2d 319, 335 (2009). "[E]vidence is noncumulative if it creates new questions in the mind of the trier of fact." *People v. Williams*, 392 Ill. App. 3d 359, 369 (2009). Actual innocence claims must be supported by "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

¶ 38     Keith's affidavit representing that Kelly had "nothing to do with the shooting" is cumulative to the evidence presented to the jury at trial. Defendant testified at trial that he did not know his brother was going to shoot, did not plan the shooting with his brother, and did not expect his brother to shoot. Keith's description of how defendant was "cursing [him] out tryin[g] to put [him] out the car" mirrors defendant's trial testimony that, "I was cursing him out. I was asking him, why would you do that?" Keith's affidavit "adds nothing to what already was before the jury." Compare *Ortiz*, 235 Ill. 2d at 337 (where defendant presented newly discovered evidence to support a claim of actual innocence where the evidence directly contradicted recanted testimony of two witnesses and no physical evidence linked defendant to the murder) with *People v. Williams*, 394 Ill. App. 3d 236, 247 (2009) (holding that defendant's actual innocence claim, if not

waived, would fail because the newly discovered evidence was "cumulative to what was presented at trial" and none of the evidence exonerated defendant). Considering the cumulative nature of the assertions set forth in Keith's affidavit, it is unlikely that his testimony would change the result on retrial. See *People v. Edwards*, 2012 IL 111711, ¶ 39 (where co-defendant's affidavit asserting that the defendant "had nothing to do with [the] shooting" and was neither "a part of nor took part in [the] crime" was not "of such conclusive character that it would probably change the result on retrial" because it "[did] nothing to exonerate defendant who was convicted of the murder under the theory of accountability" (Internal quotations omitted.)); see also *People v. Washington*, 171 Ill. 2d 475, (1996) (characterizing the "conclusive" element of an actual innocence claim as the most important).

¶ 39      In *People v. Anderson*, 404 Ill. App. 3d 134, 137 (2010), defendant attached co-defendant's affidavit to a postconviction petition, averring that defendant was unarmed and did not assist in the shooting. The court affirmed the circuit court's dismissal of defendant's postconviction petition because the evidence was cumulative of that presented at trial; "[co-defendant's] statement is cumulative of defendant's testimony at trial—that defendant drove him to retrieve his vehicle and that they did not plan on a shooting." *Id.* at 141. Similarly, Keith's affidavit in this case simply repeats defendant's trial testimony that he did not plan or participate in the shooting with his brother and did not know his brother was going to shoot.

¶ 40      Keith's corroboration of defendant's testimony may be a "basis to argue the existence of a reasonable doubt" but that is not the standard for establishing a claim of actual innocence. *Anderson*, 401 Ill. App. 3d at 141; see also *People v. Coleman*, 381 Ill. App. 3d 561, 568 (2008) (noting that " 'an allegation of newly discovered evidence of innocence is not intended to question

the strength of the State's case' "). While defendant need only state the "gist" of a claim for relief at the first stage of postconviction proceedings (See *People v. Hodges*, 234 Ill. 2d 1, 11 (2009)), "the hallmark of 'actual innocence' means 'total vindication' or 'exoneration.' " *Anderson*, 404 Ill. App. 3d at 141. Defendant has not alleged a sufficient claim of actual innocence by presenting the same evidence that was presented to, and rejected by, the jury.

¶ 41    Moreover, "[w]here the affidavit does not set forth specific facts to support that it is based on personal knowledge, it is insufficient." *People v. Brown*, 371 Ill. App. 3d 972, 984 (2007), *overruled on other grounds by People v. Young*, 2018 IL 1222598. Keith's affidavit asserts that defendant "did not know [Keith] was going to do anything." However, testifying as to what someone else knew or did not know is speculative, incompetent, and not based on personal knowledge.

¶ 42    For the reasons stated, I respectfully dissent from the majority's decision in the present case. I would affirm the dismissal of defendant's postconviction petition.