THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DALMANIC A. SIMMONS, Defendant-Appellant.

First District (6th Division)    No. 1—06—3114

Opinion filed February 20, 2009.—Rehearing denied February 17, 2009.

Michael Pelletier, Stephanie L. Horten, and Kathleen M. Flynn, all of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (James E. Fitzgerald and Michele Grimaldi Stein, Assistant State's Attorneys, and Omar Jaleel, of counsel), for the People.

JUSTICE JOSEPH GORDON delivered the opinion of the court:

Defendant, Dalmanic A. Simmons, appeals from the circuit court's denial of leave to file his third successive petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122—1 et seq. (West 2004)). For the reasons that follow, we affirm.

## I. BACKGROUND

On December 8, 1990, defendant, who was 15 years old at the time, was arrested in connection with the armed robbery and first degree murder of the victim, Ki B. Nam. After being in police custody

for almost seven hours, defendant gave a statement to police admitting his guilt. On August 7, 1991, pursuant to a negotiated plea, defendant pled guilty to murder and armed robbery. The trial court subsequently sentenced him to concurrent sentences of 40 years for first degree murder and 30 years for armed robbery.

As part of the negotiated plea hearing, the State presented a factual basis for the crimes charged and defendant stipulated that these would be the facts adduced if he were to proceed to trial. The State indicated that the evidence would show that on November 27, 1990, at about 12:05 p.m., defendant went to a store located at 1606 West 63rd Street in Chicago, which was owned and operated by the 53-year-old victim, Ki Nam. Defendant knocked on the door, and Ki Nam allowed him to enter the store by "buzzing him inside." Once inside, defendant told Ki Nam that he wanted to buy a watch. When Ki Nam asked defendant which watch he wanted, defendant pulled out a gun and shot him once. Ki Nam fell to the floor and defendant went to the cash register. When Ki Nam began to crawl toward the alarm, defendant shot him again. As Ki Nam continued his efforts to crawl to the alarm, defendant shot him two more times.

Defendant then grabbed about $48 from the cash register and attempted to flee but was unable to do so because Ki Nam needed to "buzz" him out of the store. Defendant shot the glass window in the front door and left. Ki Nam sustained four gunshot wounds and died approximately three days later from complications from those gunshot wounds.

Following his sentence, defendant did not seek to withdraw his guilty plea or to pursue a direct appeal. Rather, on October 8, 1992, defendant filed a *pro se* postconviction petition alleging, *inter alia*, that: (1) he could not understand the nature of the proceedings; (2) his sentence was excessive; (3) the trial court did not substantially comply with Supreme Court Rule 402 (177 Ill. 2d R. 402); (4) he did not understand the constitutional rights he was waiving when he pled guilty; (5) he did not understand the consequences of his guilty plea; (6) he did not understand the charges against him; (7) he was coerced into pleading guilty and did so only after a police officer "smacked" him while he was handcuffed to a wall during questioning, and because he was "scared, confused and tired and did not know who to go to for help"; (8) his arrest was unconstitutional; (9) he was unable to confront any State witnesses; (10) his mother was not allowed to be present during his interrogation; (11) he was denied a fair trial; and (12) he was denied the effective assistance of counsel because counsel failed to communicate with him and because she "deceived" him into pleading guilty by telling him that he would only have to serve 4 years of his 40-year sentence.

On October 19, 1992, the circuit court summarily dismissed defendant's postconviction petition as frivolous and without merit, stating, "[t]he defendant was admonished with regard to his plea with regard to each and every issue he states in his said petition."

Defendant appealed. In a summary order, the appellate court remanded the petition for an evidentiary hearing solely on the issue of whether defense counsel coerced defendant into pleading guilty. See *People v. Simmons*, No. 1—93—0331 (1994) (unpublished order pursuant to Supreme Court Rule 23). In doing so, the appellate court stated:

"We *** remand for a post-conviction hearing. However, our decision is based solely on defendant's allegation that his attorney coerced him into taking the guilty plea because [the] attorney told defendant that '[h]e would only do 4 years, if [he] stayed out of trouble.' If true, this statement presents a gist of a meritorious constitutional claim and entitles defendant to a hearing." *People v. Simmons*, No. 1—93—0331 (1994) (unpublished order pursuant to Supreme Court Rule 23).

Pursuant to the appellate court's order, on June 3, 1996, the circuit court conducted an evidentiary hearing to determine whether defendant's plea of guilty was the product of coercion on the part of defense counsel. During that hearing, defendant testified that a few months after his initial incarceration, he learned from some prison officers that he would have to serve 20 years of his 40-year sentence. Defendant testified that as soon as he learned this, he filed his *pro se* postconviction petition alleging counsel's ineffectiveness.

Defendant testified that when he was initially arrested on December 8, 1990, he was 15 years old and that, before he pled guilty, he spent eight months in police custody. According to defendant, during that time, his trial attorney, Julie Harmon, visited him on six occasions. Defendant averred that Harmon told him that he "did not have a chance to win at trial" and that "it would be in [his] best interest" to plead guilty. According to defendant, after a Rule 402 conference was held before the trial judge, Harmon spoke to defendant again, this time indicating that she was trying to negotiate a 20-year sentence for defendant, but that the State was asking for 60 years, and that the judge had indicated that he would permit a plea bargain for 40 years' imprisonment. Defendant testified that upon hearing this, he told Harmon that he wished to proceed with a jury trial. According to defendant, Harmon then told him that she would give him "some time to think about it." Defendant further averred that the next time he spoke to Harmon she again suggested that he plead guilty. Defendant testified that at this time Harmon told him that if he "took the plea bargain and went to the Department of Corrections and stayed out of

trouble and got involved in every program that they offered," he would only have to serve four years of his sentence. According to defendant, it was only after this conversation with Harmon that he decided to plead guilty.

Defendant acknowledged that he understood everything the judge told him at the plea hearing and that he heard the judge sentence him to 40 years' imprisonment. However, defendant averred that he did not question the 40-year sentence because Harmon had told him that the sentence would be 40 years, but that he would only have to serve 4 if he stayed out of trouble and got involved in every program that was offered at the correctional institution.

Defendant's aunt, Jacquelinn Walker, next testified that she was present in court for defendant's proceedings on one occasion. She averred that at that time, she and defendant's mother spoke with defendant's attorney, Julie Harmon, who told them that defendant was facing "no less than four years and not more than 40" years' imprisonment. According to Walker, Harmon warned them that if defendant chose to go to trial, the sentence "would be stretched out longer."

Julie Harmon, a Cook County public defender, next testified that in December 1990, she was assigned to the murder task force and that she had been working in that department for about five to six years. Harmon averred that beginning in December of 1990 and continuing through 1991, she represented defendant in his pretrial and guilty plea proceedings.

Harmon testified that during her conferences with defendant, she informed him of "the nature of the witnesses against him, the fact of the court reported confession," and told him that "there were no pretrial motions that [she] was aware of that he would be eligible for." Harmon further stated that she told defendant that there was a possibility that he could be sentenced up to 60 years in prison and that there was "a potential for natural life because of the nature of the charges."

According to Harmon, following the Rule 402 conference, she informed defendant that if he pleaded guilty, the court would impose a 40-year sentence, but that this would not necessarily be the same sentence the judge would impose if defendant chose to proceed with a trial. Harmon stated that defendant then asked her whether he would get credit "for the time he had been serving in custody," and she told him that "there were other ways to achieve good time perhaps in the jail and that he should make the most of his time while he was there and he should try to finish his schooling." Harmon also told defendant that she would ask the court to permit defendant to serve his sentence

at a juvenile facility until he reached the age of 17 and that there was a possibility that the court would permit him to remain in the juvenile facility until he turned 21.

Harmon denied telling defendant that he would only have to serve 4 years of the 40-year sentence. Rather, she testified that she informed defendant that he would have to serve half of the 40 years because he was eligible for day-for-day good time credit. Harmon also told defendant that, although not guaranteed, there was a chance that he could get an extra "couple of months" reduced from his sentence if he was a model prisoner. She advised him that it would "behoove him to make the most of his time in jail and to maintain good conduct because it could possibly help him get out somewhat sooner."

Additionally, Harmon denied telling defendant's family or friends that his sentence would be between 4 and 40 years' imprisonment, because "that was not a possibility."

At the close of the evidentiary hearing, the circuit court dismissed defendant's postconviction petition, holding that defendant was not "coerced in any manner or any form." Specifically, the court found that defense counsel did not suggest in any way that defendant would only serve 4 years of a 40-year sentence. The court also found relevant that defendant had been before the court a year after his sentence on a hearing regarding his transfer to an adult facility and that, although represented by a different counsel at that time, he never questioned the length of his sentence. Defendant appealed this dismissal.

While this appeal was pending before the appellate court, however, on December 12, 1996, defendant also filed a *pro se* pleading which he named a "Motion to Vacate Judgment in the Original Petition for Post-Conviction Relief and for Leave to File Second Petition for Post-Conviction Relief." To that motion, defendant attached his second petition for postconviction relief, which he titled "Amended Petition for Post-Conviction Relief." In his motion for leave to file the second petition, defendant asserted that his original postconviction petition was written when he was 17 years old and that as such it "constituted poor representation [sic] of his constitutional violations." Defendant further averred that, *inter alia*, his postconviction petition contained allegations that he was denied effective assistance of trial counsel and that his guilty plea was not intelligently made. Defendant also complained that when his postconviction petition was remanded to the circuit court for an evidentiary hearing, he was not able to amend his petition with the help of an attorney.

In his second *pro se* petition defendant contended that (1) the circuit court had failed to comply with Supreme Court Rule 402; (2) his trial attorney was ineffective; and (3) he was coerced into pleading

guilty. In support of this second petition, defendant attached his own affidavit. On December 30, 1996, the circuit court denied defendant's motion to vacate judgment and dismissed his second postconviction petition. Defendant appealed.

The appellate court consolidated defendant's two pending appeals. On appeal, in addition to all of the arguments raised above, defendant also argued that counsel who represented him at the evidentiary hearing on his initial postconviction petition failed to comply with the requirements of Supreme Court Rule 615(c) (134 Ill. 2d R. 615(c)). On March 23, 1998, the appellate court affirmed the decision of the circuit court to dismiss both defendant's first and his second postconviction petitions. See *People v. Simmons*, Nos. 1—96—2282, 1—97—0730 cons. (1998) (unpublished order pursuant to Supreme Court Rule 23). Defendant subsequently filed a petition for leave to appeal to the supreme court, which was denied. See *People v. Simmons*, 179 Ill. 2d 610, 705 N.E.2d 447 (1998).

On May 7, 1999, defendant filed a *pro se* "Motion for Leave to File Late Motion for Reduction of Sentence," and a "Motion for Reduction of Sentence." In these motions, defendant asserted, *inter alia*, that: (1) his plea was involuntary because he was unaware of the actual amount of time he would serve in custody upon pleading guilty and (2) that he has been "rehabilitated" by the time already spent in custody where he has gained "more respect for the law." On June 3, 1999, the circuit court denied defendant's motions.

On August 8, 2006, defendant filed a *pro se* "Motion for Leave to File Successive Petition for Post-Conviction Relief" and attached to that his third successive postconviction petition. In his third petition defendant asserted, *inter alia*, that: (1) he was denied effective assistance of trial counsel because: (a) counsel advised him to plead guilty without adequately investigating his case, including the circumstances of his interrogation, without informing him of his constitutional rights, and without taking his age into consideration; (b) counsel failed to communicate with defendant and (c) counsel coerced defendant into pleading guilty by telling him that he would only have to serve 4 years of his 40-year sentence; (2) defendant's plea was not intelligently, voluntarily or knowingly made because the trial court failed to properly admonish him; (3) the appellate court erred when it remanded his first postconviction petition to the trial court for an evidentiary hearing on only one issue thereby denying him a full and fair opportunity to present his claims; and (4) he did not understand the nature of the proceedings against him because he was only 16 years old at the time.

On September 7, 2006, in a written order, the circuit court denied

defendant leave to file a successive postconviction petition, holding that defendant was unable to satisfy the cause-and-prejudice test, which was a prerequisite to the filing of a successive postconviction petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122—1 *et seq.* (West 2004)). Defendant now appeals.

## II. ANALYSIS

On appeal, defendant contends that the circuit court erred in denying him leave to file his third postconviction petition pursuant to section 122—1(f) of the Post-Conviction Hearing Act (Act) (725 ILCS 5/122—1(f) (West 2004)). We disagree.

The Post-Conviction Hearing Act (Act) (725 ILCS 5/122—1 *et seq.* (West 2004)) provides a means by which a defendant may challenge his conviction for "substantial deprivation of federal or state constitutional rights." *People v. Tenner*, 175 Ill. 2d 372, 378, 677 N.E.2d 859, 861 (1997). A postconviction action is a collateral attack on a prior conviction and sentence and "is not a substitute for, or an addendum to, direct appeal." *People v. Kokoraleis*, 159 Ill. 2d 325, 328, 637 N.E.2d 1015, 1017 (1994). As such, the Act contemplates the filing of only one postconviction petition (*People v. Evans*, 186 Ill. 2d 83, 89, 708 N.E.2d 1158, 1161 (1999)), and obtaining leave of court is a condition precedent to filing a successive postconviction petition (*People v. Brockman*, 363 Ill. App. 3d 679, 688-89, 843 N.E.2d 407, 415 (2006); see also 725 ILCS 5/122—1(f) (West 2004) ("only *one* petition may be filed by a petitioner under this [a]rticle without leave of the court" (emphasis added)); see also *People v. DeBerry*, 372 Ill. App. 3d 1056, 1060, 868 N.E.2d 382, 384 (2007) ("section 122—1(f) unequivocally requires that a defendant *must* obtain leave of court *before* filing a successive petition ***. Section 122—1(f) constitutes a procedural hurdle *** that the legislature has intentionally chosen to impose regarding such petitions." (Emphasis in original))). Leave of court may be granted only if defendant demonstrates cause for failing to bring the claim in his initial postconviction proceeding and prejudice resulting from that failure. 725 ILCS 5/122—1(f) (West 2004); see also *People v. Pitsonbarger*, 205 Ill. 2d 444, 458, 793 N.E.2d 609, 620 (2002). To establish cause, defendant must identify an objective factor that impeded his ability to raise a specific claim during his initial postconviction proceedings. 725 ILCS 5/122—1(f) (West 2004); see also *Pitsonbarger*, 205 Ill. 2d at 458, 793 N.E.2d at 620; *DeBerry*, 372 Ill. App. 3d at 1060, 868 N.E.2d at 384; *People v. Morgan*, 212 Ill. 2d 148, 153-54, 817 N.E.2d 524, 527 (2004). To establish prejudice, defendant must demonstrate that the error not raised in his initial postconviction proceedings so infected the trial that the resulting conviction violated

due process. 725 ILCS 5/122—1(f) (West 2004); see also *Pitsonbarger*, 205 Ill. 2d at 458, 793 N.E.2d at 620; *DeBerry*, 372 Ill. App. 3d at 1060, 868 N.E.2d at 384; *Morgan*, 212 Ill. 2d at 154, 817 N.E.2d at 527. Once a reviewing court determines that section 122—1(f) has been violated, it should not consider the merits of defendant's contentions raised in his postconviction petition. See *DeBerry*, 372 Ill. App. 3d at 1060, 868 N.E.2d at 384 ("Just as trial courts should not consider anything contained within a postconviction petition that violates section 122— 1(f) of the Act, courts of review should be so limited as well. Accordingly, when *** we are reviewing the dismissal of defendant's postconviction petition and we conclude that section 122—1(f) has been violated, we have nothing further to discuss or review. That conclusion trumps anything that defendant's petition may contain"). We review the denial of defendant's motion for leave to file a successive postconviction petition *de novo*. *People v. LaPointe*, 365 Ill. App. 3d 914, 923, 850 N.E.2d 893, 901 (2006), *aff'd*, 227 Ill. 2d 39, 879 N.E.2d 285 (2007).

In the present case, we find that the circuit court correctly denied defendant leave to file his third successive postconviction petition because defendant did not raise any new claims in that petition. Defendant conceded at oral argument that the issues he attempts to raise in this, his third successive postconviction petition, are no different than those he raised in his first and second postconviction petitions. Postconviction petitions are subject to the doctrine of *res judicata*, so that all issues raised and decided on direct appeal or in the original postconviction petition are barred from being relitigated in future pleadings or any successive postconviction petitions. *People v. Blair*, 215 Ill. 2d 427, 443, 831 N.E.2d 604, 614-15 (2005). In the present case, the circuit court considered and dismissed defendant's first postconviction petition, finding that all of the issues raised therein were frivolous and patently without merit. The appellate court disagreed with the trial court and found that one of the issues raised by defendant, namely, the question of whether defendant had been coerced by his counsel to plead guilty, was not frivolous and patently without merit. The appellate court therefore remanded the case for an evidentiary hearing on that one issue alone. In doing so, the appellate court reaffirmed the finding of the circuit court that the remaining issues raised by defendant were frivolous and patently without merit. After the evidentiary hearing, the circuit court found that defendant's contention of coercion was also without merit, and on appeal we agreed, dismissing defendant's entire petition. While this appeal was pending, defendant filed his second postconviction petition, in which he raised the same contentions that he raised in his initial postconviction petition. The circuit court dismissed defendant's second postcon-

viction petition, and we affirmed that dismissal on appeal. Under these facts, we are compelled to find that defendant is barred by the doctrine of *res judicata* from relitigating the same issues for yet a third time. *Blair*, 215 Ill. 2d at 443, 831 N.E.2d at 614-15.

Defendant nevertheless contends that the issues he now raises are new because, pursuant to the decision reached by our supreme court in *People v. Rivera*, 198 Ill. 2d 364, 370-73, 763 N.E.2d 306 (2001), which was decided after defendant's second petition was filed and which proscribes the partial summary dismissal of postconviction petitions, he was entitled to a second-stage hearing on each one of them, but received only a first-stage proceeding. As such, defendant contends that he was objectively impeded from fully raising these issues before.

In *Rivera*, defendant's petition alleged six violations of his constitutional rights. *Rivera*, 198 Ill. 2d at 366, 763 N.E.2d at 307. The circuit court dismissed four claims as frivolous and patently without merit, but held that defendant's two remaining allegations stated the gist of a meritorious claim. *Rivera*, 198 Ill. 2d at 366, 763 N.E.2d at 308. As a result, the trial court advanced only two claims to the second stage of the postconviction proceedings. *Rivera*, 198 Ill. 2d at 366, 763 N.E.2d at 308. The appellate court disagreed with the circuit court and held that the Act does not provide the circuit court with a right to partially select out a specific contention for second-stage review, while summarily adjudicating the remaining contentions at the first stage, but instead requires that the entire petition be either summarily dismissed or alternatively be advanced in its entirety to the second stage of postconviction proceedings. *People v. Rivera*, 315 Ill. App. 3d 454, 458, 734 N.E.2d 26, 28 (2000).

Relying on the legislative history of the Act and the specific terms of the Act, our supreme court affirmed that portion of the appellate court's judgment as follows:

> "Clearly, the Act does not speak in terms of dismissing individual claims that are either frivolous or patently without merit; the statute speaks solely in terms of the *petition* itself being frivolous or patently without merit, and the Act mandates that if the *petition* is not dismissed under section 122—2.1, then the trial court *shall* order the *petition* docketed. \*\*\* Under the plain language of the Act, in cases such as this, the circuit court must docket the *entire* petition, appoint counsel, if the petitioner is so entitled, and continue the matter for further proceedings in accordance with sections 122—4 through 122—6. The State is then given the opportunity to answer or otherwise plead." (Emphasis in original.) *Rivera*, 198 Ill. 2d at 371, 763 N.E.2d at 310.

Our supreme court in *Rivera* did not specifically address the ap-

plication of its holding to remands on a single issue by the appellate court. However, in *People v. Montgomery*, 327 Ill. App. 3d 180, 187-88, 763 N.E.2d 368, 376 (2001), *appeal denied*, 198 Ill. 2d 627, 770 N.E.2d 223 (2002), this appellate court extrapolated the supreme court's decision in *Rivera* and held that just as the circuit court may not select out certain issues to proceed to the second stage of postconviction proceedings, the "appellate affirmance of a part of a trial court order dismissing one of multiple allegations where another allegation is found not to be frivolous or patently without merit" is not permissible under the Act.

Pursuant to *Rivera*, and its progeny, defendant now asserts that the appellate court erred when in 1994 it remanded only one issue in defendant's original postconviction petition for an evidentiary hearing, without advancing the other allegations for stage-two consideration. He asserts that the error in this initial postconviction proceeding permeated to his present petition, because as a result of the initial erroneous partial summary dismissal he was never afforded an opportunity to have an attorney review all of his original postconviction claims. For the reasons that follow, we disagree.

We first note that, contrary to defendant's contention, the right to proceed to the second stage of postconviction proceedings in order to have an attorney review and amend that petition is not of constitutional magnitude, but rather a statutorily granted right. See *People v. McNeal*, 194 Ill. 2d 135, 142, 742 N.E.2d 269, 273 (2000) ("There is no constitutional right to counsel in post-conviction proceedings. *** [T]he source of the right to counsel in a post-conviction matter is statutory rather than constitutional ***"), citing *People v. Moore*, 189 Ill. 2d 521, 541, 727 N.E.2d 348, 358-59 (2000), and *Pennsylvania v. Finley*, 481 U.S. 551, 555, 95 L. Ed. 2d 539, 546, 107 S. Ct. 1990, 1993 (1987); see also *People v. Lander*, 215 Ill. 2d 577, 583, 831 N.E.2d 596, 600 (2005) ("An indigent defendant is entitled to appointed counsel in postconviction proceedings [only] if the petition is not summarily dismissed as frivolous or patently without merit. [Citation.] *** [T]he right to counsel is wholly statutory and is not mandated by the Constitution"); see also *People v. Thompson*, 383 Ill. App. 3d 924, 931, 890 N.E.2d 1119, 1126 (2008), citing *People v. Pinkonsly*, 207 Ill. 2d 555, 567, 802 N.E.2d 236, 244 (2003) ("The right to assistance of counsel in collateral postconviction proceedings is a matter of legislative grace"); 725 ILCS 5/122—4 (West 2004) ("If appointment of counsel is so requested [by defendant], and the petition is not dismissed [at the first stage] pursuant to Section 122—2.1 the court shall appoint counsel if satisfied that the petitioner has no means to procure counsel").

Moreover, we find that defendant cannot establish the requisite prejudice to proceed with his petition pursuant to section 122—1(f) (725 ILCS 5/122—1(f) (West 2004)), because the *Rivera* holding does not apply to his cause since it was decided in 2001, seven years after the appellate court's ruling on defendant's initial postconviction petition.

Defendant nevertheless urges us to apply *Rivera* retroactively. For the reasons that follow, we must decline that invitation.

As a general rule, the United States Constitution neither mandates nor prohibits the retroactive application of new constitutional rules on collateral review. *People v. Kizer*, 318 Ill. App. 3d 238, 244, 741 N.E.2d 1103, 1109 (2000), citing *Linkletter v. Walker*, 381 U.S. 618, 629, 14 L. Ed. 2d 601, 608, 85 S. Ct. 1731, 1737 (1965). In *Teague v. Lane*, 489 U.S. 288, 103 L. Ed. 2d 334, 109 S. Ct. 1060 (1989), the United States Supreme Court set forth the procedure for deciding the applicability of a new rule on *habeas corpus* collateral review, which our supreme court expressly adopted as applicable to new rules under the Post-Conviction Hearing Act. See *People v. Flowers*, 138 Ill. 2d 218, 237, 561 N.E.2d 674, 682 (1990). According to *Teague*, a new constitutional rule should always be applied retroactively to cases on direct review, but should never be applied retroactively on collateral review, barring exceptional circumstances. See *Teague*, 489 U.S. at 305-06, 103 L. Ed. 2d at 352, 109 S. Ct. at 1072.

*Teague* sets out a three-step process for deciding the applicability of a new rule on collateral review. *Kizer*, 318 Ill. App. 3d at 245-46, 741 N.E.2d at 1110, citing *O'Dell v. Netherland*, 521 U.S. 151, 156, 138 L. Ed. 2d 351, 358, 117 S. Ct. 1969, 1973 (1997), and *Teague*, 489 U.S. at 301, 103 L. Ed. 2d at 349, 109 S. Ct. at 1070.

First, the court determines the date upon which the defendant's conviction became final. *Kizer*, 318 Ill. App. 3d at 246, citing *Teague*, 489 U.S. at 301, 103 L. Ed. 2d at 349, 109 S. Ct. at 1070. " 'A state conviction and sentence become final for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied.' " *Kizer*, 318 Ill. App. 3d at 246, 741 N.E.2d at 1110, quoting *Caspari v. Bohlen*, 510 U.S. 383, 390, 127 L. Ed. 2d 236, 246, 114 S. Ct. 948, 953 (1994).

Second, the court determines whether the constitutional rule sought by the defendant existed when the conviction became final. *Kizer,* 318 Ill. App. 3d at 246, 741 N.E.2d at 1110, citing *O'Dell v. Netherland*, 521 U.S. at 156, 138 L. Ed. 2d at 358, 117 S. Ct. at 1973. If the rule existed at the time the defendant's conviction became final,

it is not a new rule. *Kizer*, 318 Ill. App. 3d at 246, 741 N.E.2d at 1110. In that case the rule is applied on collateral review, since it was the law that should have been utilized in the first place. *Kizer*, 318 Ill. App. 3d at 246, 741 N.E.2d at 1110. If the rule sought by the defendant is new, however, it is generally not to be applied on collateral review. *Kizer*, 318 Ill. App. 3d at 246, 741 N.E.2d at 1110. According to the *Teague* plurality, "a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." (Emphasis in original.) *Teague*, 489 U.S. at 301, 103 L. Ed. 2d at 349, 109 S. Ct. at 1070.

Third, *Teague* directs that if the rule is new, the court must determine whether it falls within one of two narrow exceptions to the *Teague* doctrine: (1) whether the rule in question places an entire category of primary conduct beyond the reach of the criminal law, or (2) whether the new rule requires the observance of those procedures that are implicit in the concept of ordered liberty, *i.e.*, the new rule must be aimed at improving the accuracy of trial and be of such importance that it alters our understanding of the bedrock procedural elements essential to a fair trial. *Kizer*, 318 Ill. App. 3d at 246-47, 741 N.E.2d at 1110-11, citing *Sawyer v. Smith*, 497 U.S. 227, 241, 111 L. Ed. 2d 193, 211, 110 S. Ct. 2822, 2831 (1990). Unless one of the exceptions applies, the new rule should not be utilized on collateral review. *Kizer*, 318 Ill. App. 3d at 246, 741 N.E.2d at 1111.

In the present case, defendant asserts that *Rivera* applies retroactively because it did not set forth a new constitutional rule but rather simply interpreted existing law, *i.e.*, the Act itself. We disagree.

In *Flowers*, our supreme court explained the appropriate framework for determining whether a case sets forth a "new rule" pursuant to *Teague*:

"In discussing the meaning of a new rule, the Court in *Teague* stated that 'a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government. [Citations.] To put it differently, a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final.' (Emphasis in original.) (*Teague*, 489 U.S. at 301, 103 L. Ed. 2d at 349, 109 S. Ct. at 1070). In *Butler v. McKellar* (1990), 494 U.S. 407, [415,] 108 L. Ed. 2d 347, [356-57,] 110 S. Ct. 1212, [1217-18,] the Court said that *if prior to the rule's being established there was a significant difference of opinion on the issue in the lower courts, this would indicate that a decision is a new rule* and not merely an application of an earlier decision to a different set of facts. [Citation.]" (Emphasis added.) *Flowers*, 138 Ill. 2d at 239-40, 561 N.E.2d at 683.

See also *Kizer*, 318 Ill. App. 3d at 246, 741 N.E.2d at 1110 (" 'Few decisions on appeal or collateral review are *"dictated"* by what came before. Most such cases involve a question of law that is at least debatable, permitting a rational judge to resolve the case in more than one way. Virtually no case that prompts a dissent on the relevant legal point, for example, could be said to be *"dictated"* by prior decisions.' (Emphasis in original)"), quoting *Teague*, 489 U.S. at 333, 103 L. Ed. 2d at 371, 109 S. Ct. at 1088 (Brennan, J., dissenting, joined by Marshall, J.).

In the present case, prior to the holding of our supreme court in *Rivera* there was confusion and disagreement among our lower courts with respect to the propriety of partial summary dismissals. While there are appellate court decisions that anticipated the holding in *Rivera* (see, *e.g.*, *People v. Noel*, 291 Ill. App. 3d 541, 544, 684 N.E.2d 414, 416 (1997) (holding that "[a]llowing partial dismissal raises serious questions about the judicial review process, since first-stage dismissals are final and appealable judgments. In the interest of judicial economy, and to avoid piecemeal litigation, trial judges should refrain from entering partial summary dismissals"); *People v. Patton*, 315 Ill. App. 3d 968, 975, 735 N.E.2d 185, 190-91 (2000) (holding that section 122—2.1 of the Act does not allow partial dismissals of *pro se* postconviction petitions at stage one)), prior to the decision in *Rivera*, some districts of the appellate court consistently reviewed claims in *pro se* postconviction petitions on an individual basis and dismissed only individual claims of those petitions while permitting others to proceed to the second stage of postconviction review (see, *e.g.*, *People v. Beard*, 301 Ill. App. 3d 279, 289-90, 703 N.E.2d 552 (1998) (after reviewing the circuit court's summary dismissal of defendant's *pro se* postconviction petition, the appellate court held that one of defendant's claims stated the gist of a meritorious claim while the other one was properly dismissed, and therefore reversed in part and affirmed in part); see also *People v. Seaberg*, 262 Ill. App. 3d 79, 635 N.E.2d 126 (1994) (holding that circuit court erred in summarily dismissing one claim of defendant's postconviction petition at the first stage of postconviction proceedings and that it correctly dismissed another; reversing in part and affirming in part); see also *People v. Smith*, 326 Ill. App. 3d 831, 761 N.E.2d 306 (2001)).[1] As such, in light of the apparent disparate practices among the different districts of our appellate court, we find that the *Rivera* decision announced a new rule.

---

[1]In that respect, we note that our research has not revealed any cases on this point decided prior to or at the time defendant began his postconviction proceedings in 1992.

Defendant nevertheless asserts that in coming to its decision in *Rivera* our supreme court relied on the language of the Act and its legislative history, as well as two decisions of the appellate court, and that it therefore merely affirmed already existing law. Defendant specifically cites to the following language in *Rivera*:

"Our decision today is not without precedent. Although we acknowledge that opinions of the appellate court are not binding on this court, we do take note that our analysis of this issue is consistent with that reached by our appellate court. See *People v. Patton*, 315 Ill. App. 3d 968, 975[, 735 N.E.2d 185] (2000); *People v. Noel*, 291 Ill. App. 3d 541, 544[, 684 N.E.2d 414] (1997). Indeed, no published opinion by any Illinois court of review has reached a contrary interpretation of section 122—2.1 on this question. We affirm these appellate court decisions by holding today that summary partial dismissals made during the first stage of post-conviction proceeding are not permitted under the Act." *Rivera*, 198 Ill. 2d at 373-74, 763 N.E.2d at 311-12.

Although we acknowledge that our supreme court in *Rivera* did rely on two prior decisions of the Illinois Appellate Court in reaching its decision, the Supreme Court of the United States has held that this in and of itself is insufficient for us now to hold that *Rivera* does not set forth a "new rule." As the Supreme Court has stated:

"[T]he fact that a court says that its decision is within the 'logical compass' of an earlier decision, or indeed that it is 'controlled' by a prior decision, is not conclusive for purposes of deciding whether the current decision is a 'new rule' under *Teague*. Courts frequently view their decisions as being 'controlled' or 'governed' by prior opinions even when aware of reasonable contrary conclusions reached by other courts." *Butler v. McKellar*, 494 U.S. 407, 415, 108 L. Ed. 2d 347, 356, 110 S. Ct. 1212, 1217 (1990).

Because *Rivera* announced a new rule, we must find that it was not intended to be retroactively applied to invalidate a partial summary dismissal in a case that was fully litigated prior to its issuance. As already noted above, " '[a] state conviction and sentence become final for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied.' " *Kizer*, 318 Ill. App. 3d at 246, 741 N.E.2d at 1110, quoting *Caspari*, 510 U.S. at 390, 127 L. Ed. 2d at 246, 114 S. Ct. at 953.

In the present case, defendant filed his initial *pro se* postconviction petition on October 8, 1992, and the circuit court summarily dismissed it on October 19, 1992. The appellate court remanded defendant's single claim of coercion for an evidentiary hearing on

December 27, 1994. See *People v. Simmons*, No. 1—93—0331 (1994) (unpublished order pursuant to Supreme Court Rule 23). The evidentiary hearing was held on June 3, 1996, and the circuit court again dismissed defendant's petition. Defendant filed a motion to vacate the trial court's ruling, which was denied by the circuit court on December 30, 1996. Defendant's appeal from this dismissal of his motion to vacate the trial court's denial of relief following that evidentiary hearing was decided on March 23, 1998. See *People v. Simmons*, Nos. 1—96—2282, 1—97—0730 cons. (1998) (unpublished order pursuant to Supreme Court Rule 23). Defendant's petition for leave to appeal from that order was denied on October 6, 1998. See *People v. Simmons*, 179 Ill. 2d 610, 705 N.E.2d 447 (1998). Thus, defendant's case was fully litigated more than three years before the *Rivera* decision was issued on December 6, 2001. See *Kizer*, 318 Ill. App. 3d at 246, 741 N.E.2d at 1110. Accordingly, *Rivera* does not render improper the proceedings on defendant's initial postconviction petition.

As such, because *Rivera* does not apply retroactively to a postconviction proceeding which was fully litigated years before the decision was issued, defendant cannot rely on the *Rivera* ruling to satisfy the "prejudice" prong of the cause-and-prejudice test, as required under section 122—1(f) of the Act in order to proceed with a successive postconviction petition. See 725 ILCS 5/122—1(f) (West 2004). Consequently we find that the circuit court properly denied defendant leave to file his third successive postconviction petition. See 725 ILCS 5/122—1(f) (West 2004); see also *People v. Lee*, 207 Ill. 2d 1, 5, 796 N.E.2d 1021, 1023 (2003) (failure to satisfy either prong of the cause-and-prejudice test is a statutory bar to defendant's filing of a successive postconviction petition); see also *People v. Shipp*, 375 Ill. App. 3d 829, 833, 875 N.E.2d 153, 155-56 (2007) (holding that after a reviewing court finds that defendant has failed to satisfy section 122—1(f) of the Act, that court has "nothing further to discuss or review").

We also note that even if *Rivera* were to apply, under the holding in *Rivera* a partial summary dismissal is subject to harmless error analysis. See *Rivera*, 198 Ill. 2d at 375, 763 N.E.2d at 312. We need not, however, engage in that analysis here.

Defendant alternatively contends that he should nevertheless be afforded an opportunity to present his third postconviction petition, without meeting the cause-and-prejudice test, because he is asserting a freestanding claim of actual innocence where his guilty plea was coerced and involuntarily given. The State concedes that a defendant whose petition presents a valid claim of actual innocence is not required to satisfy the cause-and-prejudice test, but contends that defendant here has failed to present a valid claim of actual innocence. We agree with the State.

A claim of actual innocence is a cognizable claim under the Act because the conviction of an innocent person violates the due process clause of the Illinois Constitution. *People v. Washington*, 171 Ill. 2d 475, 489, 665 N.E.2d 1330, 1337 (1996). To win relief under that theory, the evidence adduced by defendant and establishing his actual innocence must first be newly discovered, *i.e.*, it must be evidence (1) that was not available at defendant's original trial and (2) that defendant could not have discovered sooner through diligence. *Morgan*, 212 Ill. 2d at 154, 817 N.E.2d at 527. Moreover, the evidence provided by defendant must also be material and noncumulative, and must be of such conclusive character that it would probably change the result on retrial. *Morgan*, 212 Ill. 2d at 154, 817 N.E.2d at 527.

In the present case, defendant presents no new evidence with respect to his contention of actual innocence. Rather, as conceded by defendant at oral argument, and as already noted above, defendant raised this same allegation in his initial postconviction petition, and his contention was dismissed by the circuit court as frivolous and patently without merit. Defendant now, just as then, merely challenges the voluntariness of his plea based upon his alleged lack of understanding of the underlying proceedings, and upon his counsel's failure to challenge the propriety of his arrest and the voluntariness of his statement to police.

Moreover, none of these challenges go to the issue of whether defendant, in fact, committed the underlying offense, *i.e.*, whether in fact he entered the victim's store under the pretense that he was going to buy something, and that he then shot the victim three times, taking with him $48 from the cash register. Defendant does not now deny, nor has he ever denied, that these were the facts of the case. As such, we find defendant's contention of actual innocence entirely without merit.

In that respect we also note that we have previously held that in the context of a postconviction petition resulting from a guilty plea, there is a distinction between a finding of "not guilty," and being "actually innocent," and we expressed our doubt as to whether a defendant who pleads guilty may even legitimately assert a postconviction claim of "actual innocence." See *People v. Barnslater*, 373 Ill. App. 3d 512, 527, 869 N.E.2d 293, 306 (2007) ("[W]e would strongly question whether a claim for relief under the Post-Conviction Hearing Act premised upon newly discovered evidence of actual innocence can suffice to raise a cognizable constitutional deprivation where the challenged conviction was entered pursuant to a plea of guilty. We believe that a defendant's postconviction claim of actual innocence cannot be deemed to deprive him of his due process rights in the face of the fact

that the defendant previously confessed to the commission of the crime in his plea. Where the constitutional basis under which the Act is invoked rests upon a defendant's claim of actual innocence, there must be a substantial showing that his continued incarceration in the face of such evidence would violate his rights under due process. If a defendant claims that his guilty plea was coerced, then that coercion provides the necessary constitutional deprivation for which postconviction relief would be appropriate, but not where he claims actual innocence in the face of a prior, constitutionally valid confession of guilt").

For the foregoing reasons, we affirm the decision of the circuit court.

Affirmed.

O'MALLEY, P.J., and McBRIDE, J., concur.