No. 3-08-0860

Filed October 29, 2010

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2010

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the Twelfth Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 90-CF-1729 |
| CHRISTOPHER KNIGHT, | ) ) | The Honorable Rodney B. Lechwar, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE McDADE delivered the opinion of the court:

In October 2002 the circuit court summarily dismissed defendant's second postconviction petition as untimely and without merit. This court reversed the circuit court's judgment and remanded for second-stage proceedings on defendant's petition for postconviction relief. On remand, the circuit court appointed counsel, and counsel amended defendant's petition. Following arguments, the circuit court entered an order granting the State's motion to dismiss defendant's second amended postconviction petition. For the following reasons, we reverse.

BACKGROUND

In 1993 the State indicted defendant, Christopher Knight, with three counts of first degree murder for the stabbing death of Henderson Simmons. In December 1993 defendant pled guilty to first degree murder under a fully negotiated plea agreement. Specifically, defendant pled

guilty to count II of the indictment alleging that defendant stabbed the victim to death with the intent to inflict great bodily harm. The incident occurred while defendant and the victim were inmates at Stateville Correctional Center.

The State initially charged defendant, Eddie Collier--also an inmate--and two others with Simmons's death. The factual basis for defendant's guilty plea was that three witnesses would testify to seeing defendant stab the victim. The victim died in defendant's cell. Two of those three witnesses would testify that Collier also attacked the victim. The factual basis for the plea also recited that two investigators would testify that defendant denied stabbing the victim and stated that Collier attacked the victim and that an uncharged inmate, Young, then stabbed the victim. At the hearing to enter the plea, defendant conceded that the State's witnesses would testify as proffered but noted that their statements were somewhat contradictory. Defendant informed the trial court that he was satisfied with his attorney's performance and that no one had forced or threatened him in any way to plead guilty. The circuit court of Will County sentenced defendant to 40 years' imprisonment.

In April 2002 defendant filed a *pro se* petition for postconviction relief from judgment on grounds of actual innocence. The petition alleged that witnesses would testify that defendant did not commit the murder but the petition did not identify all of the witnesses. Defendant attached the affidavit of Eddie Collier to the petition. Collier averred that defendant was 30 feet away from the victim when the murder occurred. Defendant also attached Walter Fields' affidavit averring that Collier pushed the victim into a cell along with another, unidentified inmate. Fields did not see what happened next but averred that defendant was not in the area or involved in the dispute that led to the attack.

-2-

The State filed a motion to dismiss defendant's *pro se* petition, attaching a transcript of proceedings on a guilty plea Collier entered in a companion case resulting from the victim's death. The factual basis for Collier's guilty plea to a charge of armed violence based on Simmons' murder recited that defendant stabbed Simmons while Collier was seen punching or making stabbing motions toward the victim. In May 2002 the circuit court of Will County summarily dismissed defendant's *pro se* petition for postconviction relief as untimely.

In February 2003 defendant filed a petition for clemency in which he stated that Young stabbed Simmons in defendant's cell while Collier held the victim down. In his petition defendant stated that he was in his cell but ran after seeing the first blow. In July 2003 defendant filed a second petition for postconviction relief on the grounds of actual innocence. Defendant alleged that Young stabbed the victim to death while Collier held the victim. Defendant attached an affidavit from Charles "Solo" Harris, also known as Jerry Hollins (hereinafter Harris), in which Harris averred (1) that defendant did not kill the victim, (2) that he relayed a message to defendant from members of the Gangster Disciples street gang that defendant had to "take the case" for the murder, and (3) that he told defendant that the gang would provide him with an attorney. Defendant's second petition also listed four other witnesses who would all testify that he did not commit the murder. The witness list included Collier.

Defendant's second postconviction petition also alleged ineffective assistance of counsel and the existence of new evidence of innocence. Defendant alleged ineffective assistance on the grounds the chief of the Gangster Disciples street gang at Stateville, Robert "Big Lowe" Lowe, hired his counsel. Defendant's claimed new evidence of his innocence was that a correctional officer on duty at the time of the murder, Sergeant David Tadlock, was addicted to illegal drugs

and, as a result of his addiction, permitted the killing to occur. Defendant also attached investigative reports into the killing to his second postconviction petition.

In second-stage proceedings on remand from this court, the amended petition included allegations that defendant was present at the scene of the murder but did not participate, that defendant complied with Harris's demand for fear he would be killed for failure to comply, and that defendant's trial counsel was ineffective because Lowe hired counsel and counsel's main objective was to deflect responsibility for the murder away from Lowe. The petition stated that Lowe is now deceased.

The amended petition had attached affidavits from Collier, Tadlock, Harris, and another witness, Walter Fields. Collier and Fields averred they were present when the murder occurred and that defendant was not involved. Harris averred defendant was not involved in the murder, but that the members of the gang decided defendant had to take responsibility to mollify officials at Stateville. Harris informed defendant of the gang's decision and assured him it would provide him with an attorney. Tadlock averred that Lowe was the leader of the Gangster Disciples in Stateville. The gang "ran drugs, prostitution and the rental of movies in Stateville." Tadlock stated that the inmates had too much freedom, including access to weapons and the ability to leave their cells, and that a lack of staff made controlling the inmates difficult. Defendant also filed his own affidavit averring that Lowe monitored his trial and directed him to plead guilty.

The State moved to dismiss defendant's second amended postconviction petition as untimely, without merit, and barred by defendant's guilty plea. In September 2008 the circuit court of Will County held a hearing on the State's motion to dismiss. Following the hearing, the circuit court entered an order granting the State's motion to dismiss defendant's second amended

-4-

postconviction petition. This appeal followed.

ANALYSIS

Defendant filed his original *pro se* postconviction petition in October 2002. It has been reviewed multiple times by the circuit court of Will County and by this court over the last eight years. Despite extremely troubling procedural irregularities, delineated by the special concurrence, which could provide a valid basis to reverse the trial court's order and remand for still further second-stage proceedings, we take note of the length of time this matter has gone unresolved, the fact the neither party to this appeal has raised the procedural flaws, and the retirement of the trial judge and choose instead to decide it on its merits.

The deadline for defendant to file a petition for postconviction relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1(c) (West 2000)) was December 21, 1996. Defendant did not file his petition until July 23, 2003. Therefore, the State argues, defendant's petition is untimely. However, the Act also provides:

> "No proceedings under this Article shall be commenced
>
> more than *** 3 years from the date of conviction *** unless the
>
> petitioner alleges facts showing that the delay was not due to his or
>
> her culpable negligence." 725 ILCS 5/122-1(c) (West 2000).

Defendant argues that his delay in filing was not due to his culpable negligence, that his petition raises a claim of actual innocence based on newly discovered evidence, and that "[n]ewly-discovered evidence of actual innocence is one situation in which a petition's late filing is not due to the petitioner's culpable negligence." The court has determined:

> " 'Culpable negligence,' as used in the Act, 'contemplates

-5-

something greater than ordinary negligence and is akin to
recklessness.' [Citation.] *** '[T]he definition gives heft to the
exception contained in section 122-1,' an exception that has been
historically viewed as a special safety valve in the Act. [Citation.]
The definition also comports with the long-held view that the Act
in general must be liberally construed to afford an opportunity to
present questions of deprivation of constitutional rights." *People v.
Marino*, 397 Ill. App. 3d 1030, 1033, 927 N.E.2d 75, 78-79 (2010).

The State argues that defendant cannot demonstrate factually that the delay in bringing
the claim was not due to his culpable negligence. The State asks us to reject defendant's
argument that, as a matter of law, a delay in raising a postconviction claim of actual innocence
cannot result from the defendant's culpable negligence, and to reject his excuse that he failed to
come forward sooner with his claim of innocence because he was under threat. The State points
out that the petition fails to allege when Lowe died and how his death removes the threat to
defendant.

As to the delay in obtaining the evidence in support of his claim, the State notes that
defendant's affidavits do not state that the witnesses were unwilling to testify as a result of
threats or for any other reason. Rather, the State argues, defendant implicitly admitted that the
delay in obtaining the evidence was not due to threats when he implied that the affiants were
previously unavailable without stating *why*.

We find that the delay in filing the petition was not due to defendant's culpable

-6-

negligence.  First, the petition alleges that Lowe died after the deadline for filing the petition had passed.  Therefore, the petition contains sufficient allegations to find that the delay in filing the petition was not due to culpable negligence, but due to the continued presence of the very coercive force that caused defendant to plead guilty.  Second, the petition alleges that defendant's witnesses were previously unwilling to testify and asserts that the witnesses who averred that defendant was not involved in the murder are only now willing to come forward because gangs no longer control the prison.

We must accept the allegations in the petition as true at this stage of the proceedings. *People v. Molina*, 379 Ill. App. 3d 91, 93-94, 882 N.E.2d 1212, 1216 (2008) ("As the State in this case moved for dismissal, the trial court was required to rule on the legal sufficiency of the allegations contained in the petition, taking all well-pleaded facts as true").  Accordingly we must find that the delay in claiming that his plea was coerced, and thus involuntary, and the delay in the discovery of the new evidence of innocence--the averments of the witnesses--was not caused by defendant's culpable negligence.

Next, the State argues that when a defendant has pled guilty, he may not simply claim actual innocence of the offense in postconviction proceedings.  The State cites *People v. Jones*, 399 Ill. App. 3d 341, 364, 927 N.E.2d 710, 729 (2010), for the proposition that "[a]n unbroken line of precedent holds that evidence is not newly discovered when it presents facts already known to a defendant at or prior to trial, though the source of those facts may have been unknown, unavailable or uncooperative. *People v. Coleman,* 381 Ill. App. 3d 561, 568, 886 N.E.2d 534, 541 (2008); *People v. Barnslater,* 373 Ill. App. 3d 512, 523, 869 N.E.2d 293, 303 (2007)."

Nonetheless the State concedes that a freestanding claim of actual innocence is cognizable in postconviction proceedings following a conviction resulting from a guilty plea when the defendant can show the plea was not knowing or was not voluntary. *Barnslater*, 373 Ill. App. 3d at 527, 869 N.E.2d at 306 ("If a defendant claims that his guilty plea was coerced, then that coercion provides the necessary constitutional deprivation for which postconviction relief would be appropriate, but not where he claims actual innocence in the face of a prior, constitutionally valid confession of guilt"); *People v. Simmons*, 388 Ill. App. 3d 599, 614, 903 N.E.2d 437, 452 (2009) (expressing no more than "doubt as to whether a defendant who pleads guilty may even legitimately assert a postconviction claim of 'actual innocence' ").

The State claims, however, that defendant's amended petition does not raise an independent claim that his guilty plea was coerced and thus involuntary. Defendant's only claim is of actual innocence. Defendant responds his petition does not abandon his claim that his guilty plea was involuntary. Defendant argues that *Barnslater* and *Simmons* support his request for an evidentiary hearing in that both *Barnslater* and *Simmons* agree that a defendant who pled guilty may seek to withdraw the plea in postconviction proceedings with a showing that the plea was coerced and, therefore, involuntary.

We agree that defendant did not abandon his discrete claim that his guilty plea was involuntary. Despite the fact that the petition states that "[t]his petition alleges that petitioner was actually innocent of the charges against him," it also states that "[p]etitioner accepted the plea bargain *** even though he was not responsible for the killing" because "he was afraid of what Lowe and other gang members would do to him if he did not take responsibility for the murder." The *Barnslater* court addressed the "defendant's renewed attempt to vacate his guilty

-8-

plea" (*Barnslater*, 373 Ill. App. 3d at 529, 869 N.E.2d at 308), because the defendant in *Barnslater* claimed his guilty plea was coerced. Similarly, here, defendant's claims raise the allegation that his guilty plea was coerced.

In addition to defendant's claim that his guilty plea was coerced, defendant claims that he is actually innocent of the offense.

> "To obtain relief under a claim of actual innocence, however, the evidence adduced by the defendant must first be 'newly discovered,' *i.e.,* it must be evidence that was not available at the defendant's original trial and that the defendant could not have discovered sooner through diligence." *People v. Jarrett*, 399 Ill. App. 3d 715, 723, 927 N.E.2d 754, 763 (2010).

We reject the State's argument that defendant's affidavits do not qualify as "newly discovered evidence." Defendant's affidavits constitute "new evidence" within the meaning of postconviction proceedings. The State relies on *Jones*, in which the court recognized that our supreme court found that the affidavits of codefendants attesting that the defendant was not present when the victim was assaulted satisfied the requirement of being "newly discovered" notwithstanding defendant's awareness of the evidence before trial. *Jones*, 399 Ill. App. 3d at 365, 927 N.E.2d at 729, citing *People v. Molstad,* 101 Ill. 2d 128, 461 N.E.2d 398 (1984). But the *Jones* court found that *Molstad* turned on its particular facts. Therefore, *Jones* found the supreme court's decision factually distinguishable and thus not controlling in that case. *Jones*, 399 Ill. App. 3d at 365, 927 N.E.2d at 729, citing *Molstad,* 101 Ill 2d at 134, 461 N.E.2d at 401.

We find that *Molstad* is factually similar to this case and is, therefore, controlling. The

*Jones* court noted:

"[I]n *Molstad,* the affidavits were presented after the

codefendants had been found guilty, but prior to sentencing.

Therefore, the affiants put themselves at risk because their own

credibility could be a factor in the assessments of their ultimate

penalty. [Citation.]" *Jones*, 399 Ill. App. 3d at 365, 927 N.E.2d at

729.

In *Molstad* the court found that the affidavits constituted newly discovered evidence. Here, the allegations in the petition–taken as true–point to a finding that the risk to the witnesses in this case was not merely of prosecution or enhanced sentencing, but of death. The reasoning in *Molstad* not only applies to this case, it creates an even stronger argument that the affidavits of defendant's witnesses constitute newly discovered evidence. See *Jones*, 399 Ill. App. 3d at 365, 927 N.E.2d at 729 (distinguishing *Molstad*).

Alternatively, the State argues that neither of defendant's claims warrants an evidentiary hearing. The State argues that defendant's claim that his guilty plea was coerced does not warrant an evidentiary hearing because the claim is positively rebutted by the record of his plea and Harris's affidavit consists of hearsay statements by unidentified persons. The State argues that defendant's claim of actual innocence does not warrant an evidentiary hearing because Collier's affidavit is rebutted by the record of proceedings in his prosecution.

Defendant argues that the assertion that his guilty plea was an acknowledgment that he committed the offense is a mischaracterization. Defendant notes that in plea proceedings he never stated that he actually murdered the victim and that the factual basis for the plea indicates

that defendant told two investigators that two other individuals attacked and stabbed the victim. The factual basis for the plea does not contain a confession by the defendant; he merely stipulated to the evidence the State would present against him. Nor does the transcript of the plea proceedings contradict his argument that his plea was coerced and thus involuntary. Defendant argues that any statement on his part that his plea was not coerced was itself the result of the same coercion that forced him to plead guilty. Defendant argues that even under the State's claim that the transcript belies the claim that the plea was coerced, the question of whether his plea was coerced and thus involuntary is a matter of credibility that can only be resolved at an evidentiary hearing.

At the second stage of postconviction proceedings, a petition may be dismissed if its factual claims are baseless. See *People v. Brown*, 236 Ill. 2d 175, 194, 923 N.E.2d 748, 759 (2010) ("the dissent's analysis is more appropriate to second-stage postconviction proceedings"). Justice Garman wrote in that dissent as follows:

> "Baseless factual claims *include* those that are ' "fantastic or delusional" ' [citations], but not all baseless factual claims are necessarily delusional. A factual claim may be baseless where the record belies the claim made in the petition. *People v. Torres,* 228 Ill. 2d 382, 394 (2008) ('this court has consistently upheld the dismissal of a postconviction petition when the allegations are contradicted by the record from the original trial proceedings'). [Citation.]" (Emphasis in original.) *Brown*, 236 Ill. 2d at 199, 923 N.E.2d at 762 (Garman, J., dissenting.)

See also *People v. Petrenko*, 237 Ill. 2d 490, 496 (2010) ("A petition lacks an arguable basis in fact if it is based upon a fanciful factual allegation, such as one that is clearly baseless, fantastic or delusional. *Hodges,* 234 Ill. 2d at 16-17").

VOLUNTARINESS OF GUILTY PLEA

The State characterizes Harris's statements regarding defendant as implausible. The State's claim that an evidentiary hearing is not warranted questions the reason a gang would choose someone to take responsibility for a crime he did not commit. The State's attack is misleading and misplaced. Defendant did not state or imply that "the Stateville authorities negotiat[ed] with the Gangster Disciples to have someone to take responsibility for the murder," as the State paints his argument. Defendant claimed the gang's motivation for forcing someone to take responsibility was to salve authorities, not the result of direct negotiations. The State offers no evidence to rebut defendant's claim or to deny its plausibility. Moreover, we do not agree with the State that the fact defendant did not immediately succumb to the threat (an implicit concession that the threat did exist) is evidence the threat did not occur.

The issue with regard to whether defendant's guilty plea was involuntary depends on the effect of any alleged threat. The relevance of Harris's testimony would not be for the truth of the nature of the threat against defendant. Rather, Harris's statement that he instructed defendant to take responsibility for the murder is relevant to show the impact of the perceived threat on defendant and whether he voluntarily pled guilty to the crime. Because Harris's statements might not be admitted for the truth of the matter asserted, the State's hearsay argument must fail.

The threshold question presented in determining if a hearing is warranted on defendant's petition is whether the threat occurred and, if it occurred, whether it coerced defendant to plead

-12-

guilty. The State's arguments have provided an affirmative answer to both questions.

ACTUAL INNOCENCE

Defendant's claim of actual innocence is supported by Collier's affidavit. In proceedings against Collier for Simmons's murder, he pled guilty to a lesser offense than murder and stated that defendant stabbed Simmons while Collier participated. Collier did not explain why he pled guilty. The State cites no authority for its reliance on the record of proceedings in Collier's prosecution. The State may not raise any argument that the proceedings of Collier's plea positively rebut defendant's well-pled allegations.

The standard, at the second-stage of postconviction proceedings, is that all well-pled allegations are taken as true unless positively rebutted by the record of the proceedings. *People v. Barkes*, 399 Ill. App. 3d 980, 986, 928 N.E.2d 102, 109 (2010) (" 'In determining whether to grant an evidentiary hearing, all well-pleaded facts in the petition and in any accompanying affidavits are taken as true.' [Citation.]"). The standard refers only to the record in the proceedings from which the defendant is seeking postconviction relief and not any other, related proceedings. The State does not challenge Collier's affidavit as invalid. The State points to nothing in the record of these proceedings to positively rebut Collier's averments. Therefore, this court, at this stage of proceedings, must consider the allegations in the petition and the averments as true. Accordingly, we find that defendant has satisfied his burden to reach the third stage of postconviction proceedings and is entitled to an evidentiary hearing on his claim of actual innocence.

The State can present evidence to refute Collier's claims at an evidentiary hearing, as would be the purpose behind conducting such a hearing. But we will not permit the State to

avoid its burden to present actual evidence that a defendant does not stand wrongly convicted by subverting the procedures by which such a defendant may–if he satisfies his burdens in postconviction proceedings–call the State to answer his claim of a constitutional deprivation.

Finally, we note that the State's arguments concerning both defendant's claims of coercion and actual innocence primarily raise issues of credibility. The State argues that the alleged threat and the affidavits in support of finding both the existence of the threat and that defendant was not involved in the murder are "vague." The State specifically characterizes some of the assertions as "implausible." The State also notes that none of the affiants claims their silence resulted from threats against them.

However, the State points to no positive evidence that the allegations are "baseless." *Brown*, 236 Ill. 2d at 199, 923 N.E.2d at 759. The record contains no evidence that such killings and manipulation are not part of the prison milieu. The allegations in the petition support a factual finding that the victim died in a gang-related killing. Defendant has alleged and provided supporting affidavits that the gangs ran the prison and provided authorities with a straw man (fall guy) to maintain their position. The State points to nothing in the record to positively rebut this proposed sequence of events or to show that it is "fantastic or delusional." See *Brown*, 236 Ill. 2d at 194, 923 N.E.2d at 759.

The State argues that the affiants failed to state they were unwilling to come forward because of the same or similar gang pressures. However, the petition also alleges that gangs no longer control the prison, freeing defendant to reclaim his innocence. That such a change in the prison dynamic would free defendant and defendant's witnesses to come forward is a reasonable inference from the well-pled allegations, and all reasonable inferences should be taken in favor of

-14-

finding that the petition should proceed to an evidentiary hearing. *Marino*, 397 Ill. App. 3d at 1033, 927 N.E.2d at 78-79.

The reason for defendant's witnesses's silence is a matter that might impact the weight of their testimony but does not change the nature of their factual claims in support of defendant's well-pled allegations. Defendant's claims that his guilty plea was coerced and therefore involuntary, and that he is actually innocent of the offense, depend primarily on the credibility of his witnesses in support of his claims. The credibility of witnesses is a matter that can only be resolved by an evidentiary hearing. *People v. Taylor*, 237 Ill. 2d 356, 378 (2010) (" 'Credibility is not, of itself, a question for a court of review ***.' [Citation.]").

CONCLUSION

At this stage of proceedings, in part due to defendant's guilty plea, the record does not contain evidence concerning the influence of prison gangs and whether or how it could direct both a killing and an inmate's acceptance of responsibility for that killing. The State can only attack the credibility of witnesses as to their claims of the realities of their existence. We do not think that defendant's factual assertions in support of his claim that his guilty plea was coerced and thus involuntary are baseless. We also find that defendant can raise his free standing claim of actual innocence in postconviction proceedings. *People v. Washington*, 171 Ill. 2d 475, 489, 665 N.E.2d 1330, 1337 (1996). Defendant's guilty plea does not prohibit him from raising either claim in postconviction proceedings. Accordingly, we hold that the trial court erred in dismissing defendant's postconviction petition without an evidentiary hearing.

For all of the foregoing reasons, the circuit court of Will County's order dismissing defendant's postconviction petition is reversed and the cause remanded for further proceedings

-15-

consistent with this court's opinion.

Reversed and remanded.

HOLDRIDGE, P.J., concurs.


JUSTICE WRIGHT, specially concurring:

After taking the matter under advisement following the second-stage hearing, the order signed by the judge on September 23, 2008, merely states the court "finds that, after reviewing the pleadings and case law and arguments made by the parties, that the State's motion to dismiss is <u>GRANTED</u>." (Emphasis in original) On appeal, the parties deal with the absence of judicial findings by assuming the court meant to allow the motion to dismiss based on all grounds set forth by the State.

I respectfully suggest that the trial court's order could be reversed based on the absence of findings alone. However, I join the majority by agreeing that, if the court intended to find in favor of the State on every issue, this order should nonetheless be set aside on the merits.

In support of my view that the order could be reversed based on the absence of findings, I point out the procedural circumstances contained in this record. Following the first appeal from the summary denial of defendant's postconviction petition, this court remanded the matter to the trial court for a second-stage hearing.

The record shows, following the issuance of this court's mandate, counsel for defendant diligently prepared for the second-stage hearing by filing an amended postconviction petition complete with multiple affidavits. Similarly, the State responded to the amended postconviction petition with a detailed motion to dismiss and provided copies of supporting case law to the court

for the trial judge's convenience.  Further, the record shows both attorneys zealously presented their arguments to the court during the second-stage hearing, which occurred September 12, 2008.

After the hearing, the court noted it had received "extensive material to deal with here" and informed the parties that it would postpone announcing the outcome of the motion to dismiss by taking the matter under advisement.  The judge promised to "render a decision in a written order."  Since the court indicated the ruling would be issued by written order, the public defender agreed to discharge defendant's writ and waive defendant's appearance before the court at the time the court issued the written order.

Yet, before issuing the written order on September 23, 2008, the judge initiated an unexpected *ex parte* conversation with the prosecutor, in open court, regarding the matter under advisement.  This communication unfolded without notice to either party and appears to have been precipitated by the prosecutor's appearance before the judge on other unrelated matters. During oral arguments counsel for the State indicated that announcing rulings from the bench without previous notice to both parties is not an unusual practice. In this case, neither this defendant nor defendant's public defender received notice of the court's intention to issue a verbal ruling or appeared before the judge on that date.

In the absence of defense counsel, the judge verbally instructed the prosecutor to prepare "an order reflecting the findings of the Court in support of your side of the arguments."  Then, after the prosecutor agreed to do so, the court announced the "State's motion to dismiss is allowed."

The transcript of this exchange between the court and the prosecutor is contained in the

record on appeal together with the transcript of the hearing on September 12, 2008. Neither transcript contains any articulated legal analysis or findings *rendered* by the judge. To the prosecutor's credit, she neither invented nor created judicial findings.

I emphasize that *judicially* rendered findings serve several purposes. Judicial findings are the only means by which a party, the interested public, and to some degree a court of review can measure whether the circuit judge properly considered the issues contained in the postconviction petition according to the mandates of the applicable law. In this case, the court approved the order prepared without findings. It is this order which the defendant has asked this court to review.

In this concurrence, I do not intend to suggest that a trial judge cannot verbally announce a ruling on the record, with both parties present, after taking a matter under advisement or should not request the prevailing party to prepare an order consistent with the court's analysis as announced in open court. This is a well-accepted practice in many circuits. In those situations, the court's *announced* findings actually dictate the result in the postconviction proceeding.

Since our review is *de novo*, our supreme court has indicated that there is little reason to give deference to the trial court's findings concerning a second-stage hearing. *People v. Childress*, 191 Ill. 2d 168, 174 (2000). Yet, I respectfully suggest our supreme court has not provided a green light for trial judges to make *no* judicial findings following a second-stage hearing or to delegate the task of rendering findings to the prevailing party in the absence of opposing counsel.

The court's directive to the prevailing party to prepare the findings is what I find troubling in this case. Hopefully, the concerns expressed in this separate concurrence will

encourage a different process in future postconviction proceedings.

My respected colleagues have carefully considered the issues, as formulated and requested by the defense, based on an assumption that the judge intended to allow the motion to dismiss on all grounds. I find their thoughtful analysis to be both thorough and persuasive. Therefore, after considering the merits of each issue raised in the motion to dismiss, I am in agreement that, based on the presumption that the trial court intended to allow the motion to dismiss on all grounds asserted by the State, the trial court's order must be set aside and the matter should be remanded for a third-stage evidentiary hearing.