2020 IL App (2d) 170668-U
No. 2-17-0668
Order filed February 10, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Du Page County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 01-CF-1864 |
| | ) | |
| MICHAEL ALFONSO, | ) | Honorable |
| | ) | Brian F. Telander, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE BRIDGES delivered the judgment of the court.
Justices Schostok and Hudson concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court did not err in dismissing defendant's second amended postconviction petition as untimely. Therefore, we affirmed.

¶ 2    Defendant, Michael Alfonso, appeals the trial court's order dismissing the second amended petition that he filed pursuant to the Post-Conviction Hearing Act (Postconviction Act) (725 ILCS 5/122-1 *et seq.* (West 2016)). We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    We restate the facts of this case largely as set forth in our opinion resolving defendant's prior appeal. See *People v. Alfonso*, 2016 IL App (2d) 130568, ¶¶ 3-15.

¶ 5    On July 3, 2001, defendant was charged with the first-degree murder (720 ILCS 5/9-1(a) (West 2000)) and aggravated stalking (725 ILCS 5/12-7.4(a)(1) (West 2000)) of Geneva Velasquez. Defendant was not apprehended and brought back to Illinois until 2005, after which the State charged him by superseding indictment with multiple counts of first-degree murder and with aggravated stalking.

¶ 6    On November 4, 2005, following a fitness hearing, the trial court found defendant fit to stand trial. The same day, the State filed a notice of its intent to seek the imposition of the death penalty. Among other aggravating factors, the State alleged that defendant had also killed Sumnear Yang on September 1, 1992.

¶ 7    On June 29, 2007, the State and the defense indicated that they were close to a plea deal. As part of the agreement, defendant was placed under oath and was examined in open court by the State's Attorney. Defendant admitted to killing Yang and Velasquez. He admitted that the only reason that he would agree to natural life imprisonment was to avoid the possibility of the death penalty. He also admitted faking a mental illness in 1994 and again in this case. He agreed that, for purposes of entering a guilty plea, he would waive any right to appeal and to raise any issue in postconviction litigation in either state or federal court. He agreed that he would "waive any and all issues that [he] could ever have brought up throughout the rest of [his] life" and that, if he ever tried to escape and "broke the agreement," the State could seek the death penalty against him.

¶ 8    The parties formally entered into the plea agreement on July 11, 2007. As to Velasquez, defendant pleaded guilty to first-degree murder and aggravated stalking, in return for natural life imprisonment for the former charge and a consecutive sentence of five years' imprisonment for the latter charge. As to Yang, defendant pleaded guilty to first-degree murder, intentional homicide of an unborn child, concealment of a homicidal death, and kidnapping. In return, he was to receive

two natural life sentences concurrent with the natural life sentence relating to Velasquez's case, and also five- and seven-year consecutive sentences that would be concurrent with each other.

¶ 9     The trial court questioned defense counsel and heard the State's Attorney's recitation of the plea agreement, which included that defendant was waiving any appeals and all collateral attacks in state and federal court. The trial court then proceeded to admonish defendant. Defendant agreed that the State's Attorney's recitation of the plea agreement was also his understanding of the agreement. The trial court inquired into defendant's medication, mental state, and satisfaction with counsel. He stated that he was able to understand the proceedings, fully discussed the case with his counsel, and was satisfied with the representation that he had received. The trial court admonished defendant of the charges, the sentencing ranges, and his right to a jury trial. Defendant waived his right to a jury trial and pleaded guilty to the charges.

¶ 10     The State presented a factual basis, to which defendant stipulated. The trial court again admonished defendant as to the agreed-upon sentences. After admonishing defendant, the trial court found that defendant's pleas were voluntary; that he understood the nature of the charges and the possible penalties that could be imposed; that he knowingly, intelligently, and voluntarily waived his right to a jury trial; and that there was a sufficient factual basis for the pleas. It further found that defendant knowingly, intelligently, and voluntarily waived his right to appeal and to collaterally attack the judgments.

¶ 11     Over five years later, on March 7, 2013, defendant filed a petition for relief from judgment under section 2-1401 of the Code of Civil Procedure (735 ILCS 52-1401 (West 2012)), and a postconviction petition. In his section 2-1401 petition, defendant argued that his natural life sentence for Velasquez's death was void because it was beyond the statutory maximum of 60 years' imprisonment and because the State did not follow statutory procedures to obtain an

extended term sentence. He also argued that his conviction of aggravated stalking was improper because his crime did not satisfy the statutory prerequisites and his conviction violated one-act, one-crime principles.

¶ 12    In his postconviction petition, defendant argued that his counsel was ineffective for failing to pursue a defense of mental illness, given that defendant had been diagnosed as mentally ill prior to the crimes, and for coercing defendant to plead guilty by assisting the State's Attorney in threatening him with the death penalty, even though there was a death penalty moratorium at that time.

¶ 13    On March 20, 2013, the trial court held a hearing on the pleadings. The State stated that it did not have a position on the postconviction petition, because 90 days had not yet passed since its filing. The trial court stated that both of defendants' pleadings violated the plea agreement, and it struck them.

¶ 14    On appeal, we held that based on the record before us at the time, defendant's waiver was knowing, voluntary, and intentional. *Alfonso*, 2016 IL App (2d) 130568, ¶ 35. We also rejected defendant's argument that the remedy for his filing petitions in violation of the plea agreement should have been vacating the agreement, rather than striking the petitions. *Id.* ¶ 36. However, we held that defendant could still file a postconviction petition alleging that counsel was ineffective in coercing him through incorrect legal advice to plead guilty, such that the trial court erred in striking the petition without reviewing it. *Id.* ¶ 38. Because the trial court had not determined whether the petition was frivolous or patently without merit within 90 days of its docketing, we remanded for second-stage postconviction proceedings. *Id.* ¶ 39. We also held that the trial court erred in striking defendant's section 2-1401 petition before 30 days had passed and before the State

had filed its response. *Id.* ¶ 40. We therefore reversed its ruling and remanded for further proceedings on the section 2-1401 petition as well. *Id.*

¶ 15    On remand, the trial court appointed postconviction counsel for defendant. On June 1, 2016, it ordered that the State file its motion to dismiss defendant's section 2-1401 petition by June 3, 2016, and that defendant would then have 45 days to respond. It further ordered that the petition would be decided on the pleadings alone, without argument.

¶ 16    In its motion to dismiss the section 2-1401 petition, the State argued that defendant's plea agreement prohibited him from filing collateral pleadings; that defendant's waiver of his right to collateral attacks was knowing, voluntary, and intentional; that defendant's claim of mental illness was refuted by the record; that there was not merit to his claim that his guilty plea was involuntary because his counsel did not tell him there was a moratorium on the death penalty; that the State notified defendant of its intention to seek the death penalty; and that defendant's convictions were not void.

¶ 17    On July 14, 2016, defendant filed a motion to withdraw his section 2-1401 petition. The State objected, arguing that defendant was attempting to avoid a dispositive ruling on the petition. On July 20, 2016, the trial court denied defendant's request to withdraw his section 2-1401 petition and granted the State's motion to dismiss it. The trial court stated that the plea agreement precluded defendant from any collateral attacks on his convictions, and that his waiver of his rights was knowing, voluntary, and intentional, as stated in our appellate decision. The trial court further stated that defendant's claims were refuted by the record and by his own statements, including his statement that he faked his mental illness. Finally, the trial court stated that it believed that defense counsel correctly informed defendant that although there was a moratorium on the death penalty at the time, defendant could still be sentenced to death.

¶ 18    Defendant appealed, but this court dismissed the appeal after defendant failed to file a docketing statement.

¶ 19    On April 6, 2017, defendant filed an amended postconviction petition through counsel. He argued that his public defender was ineffective for several reasons, namely: for failing to object to the factual basis; for failing to advise defendant that the method used in the bullet fragment analysis in the Yang case was no longer used by the FBI; for not properly advising him on the merits of the Yang case; for pressuring him to accept the plea deal by telling him that a death sentence would be inevitable; and for failing to demand that defendant be allowed to make a statement on his own behalf, which also rendered the proceedings legally deficient. Defendant further argued that his public defender was acting under a conflict of interest by advising him to accept reimbursement to the public defendant's office from money in defendant's 401(k) account as part of the plea agreement.

¶ 20    The State filed a motion to dismiss the amended postconviction petition on May 19, 2017. It argued that the trial court's ruling on defendant's section 2-1401 petition that defendant knowingly, intelligently, and voluntarily waived his right to file collateral attacks on the judgment operated as *res judicata* on this issue. The State alternatively argued that the postconviction petition was untimely, in that it was filed more than three years from the date of conviction, and that defendant did not argue that the delay was not due to his culpable negligence.

¶ 21    Defendant filed a second amended petition for postconviction relief on August 24, 2017. Defendant additionally alleged that before and during the plea proceedings, he was suffering from severe mental illnesses for which he was receiving powerful antipsychotic medications, which interfered with his ability to understand and voluntarily enter into the plea agreement. Defendant alleged that the delay in filing the postconviction petition was not due to his culpable negligence

because he had been threatened with the imposition of the death sentence if he contested the plea agreement, and because his mental illness interfered with his ability to understand how to prepare and present a petition.

¶ 22    At a hearing on August 24, 2017, the State orally amended its motion to dismiss to apply to the second amended postconviction petition. Postconviction counsel argued that *res judicata* did not apply because the ruling that defendant had knowingly, intelligently, and voluntarily waived his right to collaterally attack the judgment occurred in the context of defendant's *pro se* section 2-1401 petition, for which he did not have the benefit of counsel. He argued that defendant was not culpably negligent in filing the postconviction petition late because he feared the death penalty if he challenged his guilty plea. Counsel argued that Illinois abolished the death penalty effective June 2011, and that defendant should have had three years from that time to file the petition. Finally, counsel argued that mental health issues prevented him from filing his petition earlier.

¶ 23    The State argued that nothing prevented defendant from raising his claims in the first three years of the judgment. It further argued that the trial court was aware of defendant's medications at the time it accepted his plea, and that defendant had previously been found fit to stand trial. Last, the State argued that there was no case law that provided that a defendant must receive counsel in section 2-1401 proceedings, and that trial courts routinely ruled upon their merits.

¶ 24    The trial court stated that in ruling on the section 2-1401 petition, it found that defendant knowingly, intelligently,[1] and voluntarily waived his rights to file a collateral attack based on the

---

[1] We note that when the trial court ruled on the section 2-1401 petition, it found that defendant's waiver was knowing, voluntary, and "intentional," as we had stated in our opinion

court file and the law, and the ruling had nothing to do with how artfully the section 2-1401 was written or how it was argued. It agreed with the State that the defense was barred by *res judicata* on that issue, and it granted the State's motion to dismiss on this basis. The trial court also stated that it agreed with the State that the postconviction petition was untimely.

¶ 25    In its written order, the trial court stated that it was granting the State's motion to dismiss for the reasons set forth in the record. It further stated: "THE COURT FINDS RES JUDICATA BARS DEFENDANT'S AMENDED POST-CONVICTION PETITION. IT PREVIOUSLY RULED THAT DEFENDANT KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY WAIVED HIS RIGHT TO COLLATERAL ATTACKS."

¶ 26    Defendant timely appealed.

¶ 27                              II. ANALYSIS

¶ 28    The Postconviction Act allows criminal defendants to make collateral attacks on their convictions by asserting that their constitutional rights were substantially violated at trial. *People v. Custer*, 2019 IL 123339, ¶ 29. It creates a three-stage process to adjudicate postconviction petitions. *People v. Buffer*, 2019 IL 122327, ¶ 45. As relevant here, during the second stage of proceedings, the State may either answer the petition or move to dismiss the petition. 725 ILCS 5/122-5 (West 2016); *People v. Dupree*, 2018 IL 122307, ¶ 29. To survive dismissal, the petition

---

(see *Alfonso*, 2016 IL App (2d) 130568, ¶ 35), as opposed to "intelligent." However, the waiver of constitutional and statutory rights have also been judged under the standard of whether it was knowing, voluntary, and "intelligent" (see, *e.g.*, *People v. Lesley*, 2018 IL 122100, ¶ 50; *People v. Bannister*, 232 Ill 2d. 52, 67 (2008)), so we treat both standards as the same for purposes of this appeal.

must make a "substantial showing" of a deprivation of constitutional rights. *Id.* ¶ 28. The trial court examines the petition to determine its legal sufficiency, and it must accept as true any allegations not affirmatively rebutted by the record. *Id.* ¶ 29. Where, as in this case, the trial court dismisses a postconviction petition at the second stage, we review its ruling *de novo*. *Id.*

¶ 29    The State's motion to dismiss argued *res judicata* and untimeliness. The Postconviction Act provides limitation periods for filing a petition, which include three years from the conviction if no appeal has been filed. 725 ILCS 5/122-1(c) (West 2016). However, section 122-1(c) allows a defendant to bypass these time limitations by "alleg[ing] facts showing that the delay was not due to his or her culpable negligence." *Id.*[2] Culpable negligence is something more than ordinary negligence, and it is akin to recklessness. *People v. Johnson*, 2017 IL 120310, ¶ 26. It involves " 'an indifference to, or disregard of, consequences.' " *People v. Boclair*, 202 Ill. 2d 89, 106 (2002) (quoting 65 C.J.S. Negligence § 19 (2000)).

¶ 30    On appeal, defendant argues that the trial court offered two justifications for dismissing the petition. First, the petition was barred by defendant's plea agreement, and any argument to the contrary was barred by *res judicata*. Second, the petition was untimely, and the delay in its filing was due to defendant's culpable negligence.

¶ 31    Defendant argues that his postconviction petition made a substantial showing that it was not barred by the plea agreement. However, both the report of proceedings and the trial court's written ruling show that the trial court did not make an independent finding during the postconviction proceedings that defendant knowingly, intelligently, and voluntarily waived his

---

[2] Although not applicable here, the time limitations also do not apply if the defendant claims actual innocence. 725 ILCS 5/122-1(c) (West 2016)).

right to collateral attacks. Instead, the trial court referred to the fact that it had previously made this finding during the section 2-1401 proceedings, and it ruled that defendant's argument was barred by *res judicata*.

¶ 32    Defendant argues that the trial court's reliance on *res judicata* was incorrect because, in dismissing defendant's section 2-1401 petition, the trial court relied on our statement that defendant's waiver was knowing, voluntary, and intentional. See *supra* ¶¶ 14, 17. Defendant maintains that although we held that the trial court's plea admonishments were adequate, we did not rule on whether defendant's guilty plea was the result of ineffective assistance of counsel. Defendant cites our statement: "While we acknowledge the presence of this claim, it is not our role to determine whether it is frivolous or patently without merit." *Alfonso*, 2016 IL App (2d) 130568, ¶ 38. Defendant argues that the very fact that the case was remanded should have led the trial court to realize that we had not ruled on the issue.

¶ 33    Defendant additionally argues that he alleged facts showing that the untimely filing was not the result of his culpable negligence. Defendant notes that he pleaded guilty on July 11, 2007, and did not appeal his sentence. Under section 122-1(c) of the Postconviction Act (725 ILCS 5/122-1(c) (West 2016)), his postconviction petition was due on July 11, 2010. He did not file it until March 7, 2013, but he argues that this delay was not due to his culpable negligence. Defendant points to his argument that the same threat of execution that caused him to involuntarily plead guilty remained until "January 1, 2011," when Illinois abolished the death penalty.[3] Defendant maintains that this allegation was sufficient to excuse his late filing under *People v. Knight*, 405 Ill. App. 3d 461, 465 (2010), where the defendant filed his postconviction petition more than six

_____

[3] The death penalty was abolished effective July 1, 2011. 725 ILCS 5/119-1 (West 2012).

years late. In that case, the defendant alleged that he could file the petition only after the death of the gang leader who controlled the prison and had arranged the defendant's guilty plea. The defendant alleged that gang witnesses were now willing to come forward because they no longer feared being killed. Defendant argues that his situation is similar to *Knight* because the threat that caused him to plead guilty continued until long after the due date for his petition.

¶ 34    Defendant argues that the terms of his plea agreement additionally contributed to his late filing, because he was told by both the prosecutor and the judge that he had no right to challenge his plea in any way. Defendant maintains that these statements were incorrect, as shown by our holding that he could file a postconviction claim that his waiver was not knowing and voluntary. See *Alfonso*, 2016 IL App (2d) 130568, ¶ 38. He argues that he alleged in his *pro se* postconviction petition that his trial attorney never told him that the statements were erroneous. Defendant analogizes this case to *People v. Rissley*, 206 Ill. 2d 403, 421 (2006), where the supreme court held that the defendant was not culpably negligent in filing his postconviction petition late, because the defendant's appellate counsel incorrectly advised him of the due date.

¶ 35    The State maintains that defendant has forfeited his last argument because he did not raise these allegations in his second amended postconviction petition as reasons for his late filing. We agree. Regardless of what defendant alleged in his *pro se* postconviction petition, it was superseded by defendant's second amended postconviction petition. See *People v. Phelps*, 51 Ill. 2d 35, 38 (1972) (the issue of ineffective assistance of counsel brought up in the defendant's *pro se* postconviction petition was not before the court because it was not included in the amended petition filed by appointed counsel); *Barnett v. Zion Park District,* 171 Ill. 2d 378, 384 (1996) ("Where an amended pleading is complete in itself and does not refer to or adopt the prior pleading, the earlier pleading ceases to be part of the record for most purposes and is effectively abandoned

and withdrawn."). Defendant's second amended postconviction petition did not claim that allegedly incorrect statements by the prosecutor and trial court, along with the failure of his trial counsel to inform him of the falsity of the remarks, caused him to file his postconviction petition late, so we do not consider these allegations.

¶ 36    The State further argues that there is no support for defendant's argument that he could not seek to withdraw his guilty plea until the death penalty was abolished. The State argues that, instead, defendant's fear as a result of his own actions of murdering two people does not excuse an untimely petition. The State argues that this situation is distinguishable from *Knight* because there were no external forces or individuals threating him or forcing him to plea guilty. According to the State, defendant chose not to timely-file a postconviction petition because he knew that if he succeeded in his claims, his crimes subjected him to a more serious sentencing range. The State argues that defendant instead waited until the law changed and became more advantageous to his position.

¶ 37    The State maintains that even if defendant was not culpably negligent in waiting to file his postconviction petition until the death penalty was abolished, the death penalty was abolished on July 1, 2011 (725 ILCS 5/119-1 (West 2012)), and defendant did not file his petition until "26 months" later.[4] The State cites *People v. Davis*, 351 Ill. App. 3d 215, 218 (2004), where the court stated, "whether delay is due to culpable negligence depends not only on when the claim is discovered but on how promptly the defendant takes action after the discovery." The State highlights that in *Davis*, this court held that the defendant's claim was untimely where he waited

---

[4] Defendant filed his postconviction petition on March 7, 2013, which is about 20 months after July 1, 2011.

two years after discovering his claim to file his petition. *Id.* It also cites *People v. Ramirez*, 361 Ill. App. 3d 450, 453-54 (2005), where this court held that the defendant's postconviction petition was untimely where he waited 40 months after the case that was the basis for his petition was filed. The State argues that, similarly, defendant offers no explanation as to why he waited more than two years after the abolishment of the death penalty to file his petition, rendering the petition untimely.

¶ 38   The State additionally argues that the trial court correctly applied *res judicata*, because it had already ruled in the section 2-1401 proceedings that defendant had failed to show that his waiver and guilty plea were involuntary. It alternatively argues that defendant's claim is barred by collateral estoppel. Finally, the State argues that dismissal is warranted even if we were to reach the merits of defendant's claims.

¶ 39   We agree with the State that dismissal was justified because the postconviction petition was untimely, and defendant failed to allege facts showing that the delay was not due to his culpable negligence. Even accepting that defendant would not have been culpably negligent until the death penalty was abolished, that occurred effective July 1, 2011 (725 ILCS 5/119-1 (West 2012)). The public act abolishing the death penalty was approved earlier, on March 9, 2011. P.A. 96-1543, § 10, eff. July 1, 2011. Defendant filed his postconviction petition on March 7, 2013, about 20 months after the effective date, and about two years after the public act was approved. He offers no explanation for this delay, contrary to the section 122-1(c)'s requirement that defendant "allege[ ] facts showing that the delay was not due to his or her culpable negligence." 725 ILCS 5/122-1(c) (West 2016).

¶ 40   Cases reviewing postconviction petitions with similar delays have concluded that they were untimely. As the State points out, *Davis* involved a delay of two years, and *Ramirez* involved a

delay of 40 months, without an explanation by the defendants. *Davis*, 351 Ill. App. 3d at 218; *Ramirez*, 361 Ill. App. 3d at 453-54. In *People v. Gerow*, 388 Ill. App. 3d 524, 531 (2009), the court stated that "[t]he allowance of a postconviction petition more than 26 months after the timely filing deadline without excuse is unprecedented in Illinois." We recognize that in *People v. Wilburn*, 338 Ill. App. 3d 1075, 1078 (2009), the court held that the defendant's postconviction petition was not untimely where he filed it within 16 months of the issuance of a case. However, *Gerow* stated that the "*Wilburn* court did not explain its reasoning for its decision that a 16-month delay did not constitute culpable negligence." *Gerow*, 388 Ill. App. 3d at 529; see also *Johnson,* 2017 IL 120310, ¶ 26 (ignorance of the law or legal rights is not an excuse to delay bringing a lawsuit). Additionally, this case involves a longer delay than *Wilburn*, especially considering that the public act abolishing the death penalty was approved months before the effective date.

¶ 41    Defendant additionally alleged that he was not culpably negligent because his mental illness interfered with his ability to understand how to prepare and present a petition. However, this allegation is rebutted by the record, in that defendant was found fit to stand trial in 2005; in 2007 the trial court inquired into his medications and mental state before accepting his guilty plea; and during the same proceedings, defendant admitted faking a mental illness in 1994 and also in this case. Defendant does not make any allegations that his mental health changed after 2007, or explain why it would amount to a 20-month delay in filing the petition. Accordingly, the trial court did not err in dismissing defendant's second amended postconviction petition as untimely.

¶ 42    Based on our resolution, we do not address defendant's argument that the trial court erred in dismissing his petition as also barred by *res judicata*, nor do we examine the State's additional asserted bases for affirming the trial court's ruling.

¶ 43                                    III. CONCLUSION

¶ 44    For the reasons stated, we affirm the judgment of the Du Page County circuit court.

¶ 45    Affirmed.